**In re TRI–UNION DEVELOPMENT CORPORATION, Debtor.**

No. 00–32498–H4–11.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Oct. 4, 2000.

Mr. Joel Kay, Sheinfeld, Maley & Kay, Houston, TX, for Debtor.

## MEMORANDUM OF DECISION

### WILLIAM R. GREENDYKE,
Bankruptcy Judge.

This matter came before the Court on May 17, 2000, on the above-styled Motion. At the conclusion of the hearing, the Court entered an Interim Order which authorized the payment of the prepetition royalties with respect to Louisiana oil and gas leases and prepetition royalties with respect to the Lohse oil and gas lease in California. The remaining aspects of the Motion requesting payment of prepetition royalties with respect to oil and gas leases in Texas and the other oil and gas leases in California were taken under advisement.

## FACTUAL BACKGROUND

The Debtor operates oil and gas wells in Texas, Louisiana, California and offshore Texas and Louisiana. Its properties are the subject of over 1,000 oil and gas leases which are to be construed in accordance with the law of the State in which the property is located (with the exception of the offshore leases, which are governed by federal law and administered by the Minerals Management Service). The Debtor has represented to the court that prior to March 14, 2000, the date of filing of the Chapter 11, the Debtor was "generally current" in the payment of all royalty and working interest obligations. Unfortunately, in the course of payment, approximately 950 checks issued between September 1999 and March 1, 2000, had not been presented for payment prior to the date of filing. These unpaid checks total $296,-961.13. Further, as of the petition date, the Debtor had received proceeds of oil and gas production which had not been processed through Debtor's accounting system for final payment. These proceeds totaled $201,271.13. Debtor now seeks permission to pay these prepetition claims. Although several creditors and the Unsecured Creditors' Committee objected to the Debtor's motion, upon hearing, the parties consented to payment of the prepetition royalties with respect to the Louisiana oil and gas leases and the Lohse oil and gas lease in California. The Debtor withdrew its request to pay prepetition working interest owners. An interim order was then entered to implement the agreements made, subject to the Court's ruling herein.

With respect to the Texas leases, the general question presented to the Court was whether these royalty interest owners

hold a security interest. This question requires an examination of section 9.319 of the Texas Business & Commerce Code, which provides for: "a security interest in favor of interest owners (as secured parties) to secure the obligations of the first purchaser of oil and gas production (as debtor) to pay the purchase price." The specific issues presented are whether 1) the debtor qualifies as a first purchaser and if so, 2) does the statute cover all royalty owners' claims, that is, both those royalty owners who take their royalty in kind as well as those who are paid money for their royalty?

The debtor argues that it is indeed a "first purchaser" as that term is defined and that the royalty owners hold an automatically perfected security interest in the oil and gas production and also in the proceeds of such production currently being held by the debtor.

The Creditor's Committee argues that section 9.319 does not apply to all royalty owners but instead to royalty owners who take their production in kind. The Committee argues since the statute only "secure[s] the obligations of the first purchaser of oil and gas production to pay the purchase price," this would cover only the first purchaser incurring an obligation to pay the "purchase price." Thus, the security interest should only be in favor of the party actually selling the production. Royalty owners typically agree to let the operator sell the oil or gas at the well head for their account. Since such a royalty owner is not selling anything, it is argued that the security interest should not attach in such situations. A royalty owner who takes in kind, however, would receive a security interest, since they are receiving production which in turn is sold by the royalty owner to a third-party "first purchaser."

## DISCUSSION

Resolution of these issues requires an examination of the reasons for the existence of section 9.319 of the Texas Business and Commerce Code. Prior to 1983, the Texas version of the U.C.C. did not contain a section 9.319. However, the Texas Legislature responded to the (first) "oil and gas bust" of the early '80's by enacting the non-standard language we now know as section 9.319. The bankruptcies of several large oil and gas operators and purchasers had a considerable impact on Texas royalty and non-operating working interest owners and the new provisions were designed to protect those interests.[1] In the absence of a statute such as section 9.319, the breach of contract or tort cause of action of an unpaid royalty owner would become a general unsecured claim in the bankruptcy of the operator or oil and gas purchaser.[2] The new statute was designed to change this result through the creation of a security interest in favor of interest owners to secure the obligation of the first purchaser of oil and gas production to pay the purchase price.[3] The ability of the royalty owner to rely upon section 9.319 does not depend upon the existence of either a written agreement for attachment of the lien or the filing of a financing statement. There merely has to be: 1) a writing which gives the interest holder a right under real estate law (i.e. a deed, oil and gas lease, mineral assignment, etc.); and 2) the act of the first purchaser making a voluntary communication to the interest owner acknowledging his or her rights to the oil and/or gas property or its proceeds.[4]

In the case at bar, there has been no assertion that any of the ostensible royalty owners fail to possess sufficient written evidence or muniment of title. Similarly,

1. *See* Cynthia C. Grinstead, *The Effect of Texas U.C.C. Section 3.19 on Oil and Gas Secured Transactions,* 63 TEX. L.REV. 311 (1984).

2. *See id.* at 317.

3. *See id.* at 323.

4. *See* TEX. BUS. & COM. CODE § 9.319(a)(1991).

the evidence at trial was that the Debtor receives "100 percent division orders" from its oil and gas purchasers. That is to say, with the exception of a few royalty owners who take in kind, the Debtor receives the income attributable to 100% of the production, with the concomitant duty to disburse to its working interest and royalty interest owners. The facts of this case squarely place these royalty owners within the protective terms of section 9.319 of the Texas Business and Commerce Code.

The "in kind only" argument propounded by the Creditor's Committee may have been plausible as the statute was originally written. However, in 1987, the Texas Legislature amended the definition of first purchaser so that it would include: "... an operator that receives production proceeds from a third-party purchaser who acts in good faith under a division order or other agreement signed by the operator under which the operator collects proceeds of production on behalf of other interest owners." [5] The 1987 amendments went further to provide that the operator acting on behalf of interest owners would be the first purchaser to the extent it had received proceeds from the down-stream buyer, but that if the operator was unpaid at the time of insolvency, etc., then the downstream buyer would continue to be the first purchaser, so that the interest and royalty owners would continue to have a lien.[6] Clearly, the Legislature intended to protect those royalty owners who typically allow their royalties to be paid by the operator in funds rather than in kind.

The Court concludes that the debtor is a "first purchaser" as that term is defined in section 9.319(q)(3).[7] The debtor clearly falls within this section to the extent it acted as an operator who received, on behalf of royalty owners, production proceeds from third party purchasers. Similarly, all royalty owners, whether taking in kind or in funds, would enjoy the protection of a lien in production or proceeds.

■ The Court now turns to the next question of who exactly is covered by the term "interest owner." The answer to this question seems clear from the reading of the statute. The first sentence grants a security interest in favor of "interest owners." Section 9.319(q)(2) broadly defines "interest owner" as a "person owning an entire or fractional interest of any kind or nature in oil or gas production at the time of severance, or a person who has an express, implied, or constructive right to receive a monetary payment determined by the value of oil or gas production or by the amount of production." As one commentator has written, "[o]wners of unleased mineral interests, working interests, royalty interests, overriding royalty interests and most forms of production payments are clearly included within those persons having 'ownership' interests. The second part of the definition is very broad and therefore should be given an expansive interpretation." [8] The Court is in agreement with the author that the definition should be given an expansive definition. Consequently, this definition would seem to

5. TEX. BUS. & COM. CODE § 9.319(q)(3)(1991).

6. *See id.*

7. This section, in complete form, defines "first purchaser" as "[A]n operator that receives production proceeds from a third-party purchaser who acts in good faith under a division order or other agreement signed by the operator under which the operator collects proceeds of production on behalf of other interest owners. To the extent the operator receives proceeds attributable to the interest of other interest owners from a third-party purchaser who acts in good faith under a division order or other agreement signed by such operator, the operator shall be considered to be the first purchaser of the production for all purposes under this section, notwithstanding the characterization of other persons as first purchasers under other laws or regulations...."

8. Terry Cross, *Oil and Gas Product Liens; statutory Security Interests for Producers and Royalty Owners under the Statutes of Kansas, New Mexico, Oklahoma, Texas and Wyoming,* 50 CON. FIN. L.Q. REP. 418 (1996).

clearly include all royalty and working interest owners.

█ The Committee also asserts that, arguendo, even if the Texas royalty owners did have secured claims by virtue of section 9.319, then the liens would be avoidable under 11 U.S.C. § 545(2) because the royalty lien is a statutory lien and as such is not effective against purchasers in the ordinary course of business. Section 545(2) of the Bankruptcy Code provides that: "[the Debtor] may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—... (2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property, whether or not such a purchaser exists;...." The Committee points out that section 9.319(c)(1)(A) provides that the "sale of such proceeds" by a first purchaser to a buyer [of the proceeds] in the ordinary course will cut off the security interest in the proceeds which otherwise would inure to the benefit of the interest holder. The implication of the argument is that the sale of oil and gas by Tri–Union to an oil and gas purchaser in the ordinary course would cause the forfeiture of the royalty owners lien position under state law. Consequently, because Bankruptcy

law supplies this hypothetical good faith buyer, then the liens, if any, of the royalty owners would be avoidable by "the trustee" (debtor in possession). The first and most obvious flaw in this argument is that the debtor has prudently chosen not to attempt to avoid these royalty liens—it is seeking to adequately protect not only the collateral interests of the royalty owners, but also its own image by filing this motion to pay. Second, and more importantly, the subsection of section 9.319 relied upon relates to the duration of the security interest in proceeds and not the validity of the lien in the first instance.[9]

Taken out of context, the clause cited by the Committee seems to support the argument it makes. However, when subsection (c) is viewed as a whole, it becomes apparent that the security interest which is at risk of being lost to a bona fide purchaser arises only when the oil and gas production has been converted or traded for other "oil or gas production, inventory of raw, refined, or manufactured oil or gas production, or rights to or products of any of these, ..."[10] When, however, the proceeds are either accounts or cash proceeds, the security interest exists "for an unlimited time."[11] The Committee's statutory

---

9. Subsection 9.319(c) in its entirety reads:

The security interest exists in oil and gas production, and also in the following proceeds of such production owned by, received by, or due to the first purchaser:
(1) for an unlimited time if:
(A) the proceeds are oil or gas production, inventory of raw, refined, or manufactured oil or gas production, or rights to or products of any of these, although the sale of such proceeds by a first purchaser to a buyer in the ordinary course of business as provided in Subsection (e) will cut off the security interest in those proceeds;
(B) the proceeds are accounts, chattel paper, instruments, and documents; or
(C) the proceeds are "cash proceeds" as defined in Section 9.306 of this code; and
(2) for the length of time provided by Section 9.306 of this code as to all other proceeds.

10. TEX. BUS. & COMM. CODE § 9.319(c)(1)(A)(1991).

11. TEX. BUS. & COMM. CODE § 9.319(c)(1) (1991). Indeed, it is again apparent from the Legislature's response to "current events" such as adverse judicial rulings that it clearly intends for royalty and working interest owner's security interests in proceeds to remain inviolate. In the case of *In re The Prudential Energy Company*, 58 B.R. 857 (Bankr. S.D.N.Y.1986), a New York Bankruptcy Judge found that section 9.306 of the Texas Business and Commerce Code limited the secured party's interest when the proceeds of the royalty were commingled with the other funds of the debtor, to the maximum amount of the royalty funds received by the debtor within the last ten days before the entry of the order for relief under Title 11 of the United States Code. In that case, the royalty owners either were unable or failed to prove the amount of royalty proceeds received within 10 days and their claims were held to be unsecured. The Texas Legislature responded by amending section 9.306 to add subsection 9.306(d)(5), which had the apparent effect of excluding

lien argument is inapposite because of this construction of section 9.319. Simply stated, under section 9.319, the liens of the royalty and working interest owners in the production of its cash or account proceeds were perfected and enforceable as of the date of filing and were not susceptible to being cut off by a bona fide purchaser under state law or section 545 of the Bankruptcy Code.

■ The Court can find no distinction in the statute between an interest holder who receives a share of production in kind and one who receives only cash proceeds. The security interest runs in favor of all interest owners (as defined) and not just interest owners in kind. Comment 5 to the statute discusses the lack of distinction between takers in production and takers in proceeds. "People in the business of dealing with operators and 'first purchasers' are substantially aware that royalty owners and the like always exist and have a claim to the production. No unfair surprise will result if their claim also extends to proceeds." [12] The Court declines to read the statute so narrowly as suggested by the Committee. A narrow construction would go against the "expansive interpretation" which the statute seems to require. Accordingly, the Court finds that the Texas royalty owners hold security interests in production and proceeds thereof.

■ Turning to the remaining California oil and gas leases, the Court can find no statutory authority which would provide a lien or other security interest for royalty and working interest owners. It seems that California does not provide statutory liens for royalty owners with respect to oil and gas leases. California royalty owners have only one recourse for unpaid royalties and that is through litigation, which is stayed in the case due to the operation of 11 U.S.C. § 362.[13]

■ The final question to be addressed is the propriety of the debtor making payment of any of the royalty or working interest claims prior to confirmation of a plan of reorganization. The Fifth Circuit, in the case of In the Matter of Oxford Management Inc.,[14] specifically held that the payment of a prepetition claim prior to confirmation of a Chapter 11 plan was contrary to the provisions of the Code. Indeed, this Court in the context of other Chapter 11 cases has ruled that it is improper under the current Code and case-law for the debtor, pre-confirmation, to cross-collateralize or "refinance and re-collateralize" a prepetition secured debt secured by substantially all of the debtor's assets.[15] In the context of this case, however, the facts bear some distinction. First, all of the interests in question are cash collateral in nature. To that extent, the debtor is under a statutory obligation to segregate and account for the collateral of the royalty and working interest owners.[16] Second, the debtor cannot use the cash for any other purpose without court order and without affording adequate pro-

---

section 9.319 liens from the general provisions of section 9.306 relative to insolvency proceedings. The 9.319 liens now extend to all cash and deposit accounts of the debtor in which royalty or working interest proceeds have been commingled. In the case at bar, no argument has been made about the commingling of funds, the applicability of 9.306, or the need for tracing of funds. Consequently, any potential statutory lien argument which could arise in such a situation simply does not confront us today.

12. TEX. BUS. & COMM. CODE § 9.319 [comm. 5] (1991).

13. For an example of other states which have enacted oil and gas lien statutes, see the Oil & Gas Products Lien Act, N.M. STAT. ANN. § 48–9–1– § 48–9–8 (Michie 1978); Oil & Gas Owners' Lien Act, OKLA. STAT. ANN. tit. 52 §§ 548–548.6 (West 1988); KAN. STAT. ANN. § 55–201– § 55–229 (1994).

14. See Chiasson v. J. Louis Matherne & Assoc. (In the Matter of Oxford Mgmt. Inc.), 4 F.3d 1329 (5th Cir.1993).

15. See Shapiro v. Saybrook Mfg. Co. Inc. (In the Matter of Saybrook Mfg. Co., Inc.), 963 F.2d 1490 (11th Cir.1992).

16. 11 U.S.C. § 363 (1994).

tection for the interests of the royalty and working interest owners.[17] If the oil and gas interest owners had filed a motion to lift the stay to allow them to retake the funds and the debtor did not object, the Court would grant the motion. In this case, the debtor has proposed this result and, except for the objection of the Committee that the interest owners may not be secured creditors under state law, there is no objection to the relief requested with respect to the Texas royalty owners and the Louisiana and limited California interests made the object of the Interim Order. The Court assumes, therefore, that the cash collateral is not necessary to the effective reorganization of the debtor, that there is no equity in the cash collateral for the benefit of the estate and that further retention of the funds would be burdensome to the estate and as such they can be abandoned (read: "paid").[18]

To conclude, since Texas provides for a security interest in favor of interest owners (as that term is defined), the Debtor is authorized to pay the prepetition royalties with respect to the Texas oil and gas leases. As California does not provide its royalty owners with a lien, there is no authority for the debtor to pay these unsecured royalty interest owners at this time. They must wait to receive any distribution until after a plan has been proposed and confirmed.

By separate form of order, the Court shall finalize the interim order, grant Debtor's motion as to the Texas royalties and deny the motion as to the California royalties not dealt with in the interim order.

---

**17.** 11 U.S.C. § 363 (1994).

**18.** 11 U.S.C. § 362 (1994).