## In re ENRON CORP., et al., Debtors.

### No. 01–16034(AJG).

United States Bankruptcy Court, S.D. New York.

Dec. 17, 2003.

---

Barry A. Brown, P.C., Barry A. Brown, of counsel, Houston, TX, for Upstream Energy Services (As Agent For Certain Texas Producers).

Weil, Gotshal & Manges LLP, Martin J. Bienenstock, Brian S. Rosen, Melanie Gray, Stephen T. Loden, of counsel, New York City, for Enron North America Corp.

## MEMORANDUM DECISION DETERMINING THAT UPSTREAM ENERGY SERVICES IS NOT ENTITLED TO A SECURITY INTEREST UNDER TEXAS LAW AS AGENT FOR CERTAIN TEXAS PRODUCERS

ARTHUR J. GONZALEZ, Bankruptcy Judge.

Before the Court is a motion by Upstream Energy Services ("UES"), as agent for certain Texas oil and gas producers ("Texas Producers"), for summary judgment ("Motion") against Enron North America Corp. ("ENA"). For the reasons that follow, the Court denies the Motion and grants summary judgment in ENA's favor.

### I. Jurisdiction

The Court has subject matter jurisdiction under 28 U.S.C. §§ 1334(b) and 157(a) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court, dated July 10, 1984 (Ward, Acting C.J.). This is a core proceeding as that term is defined by 28 U.S.C. § 157(b)(2).

### II. Background

Except where it may be noted, the parties do not dispute the following material facts. In October 2001, ENA and UES executed a series of agreements (the "Spot Confirmations") for the delivery of natural gas (the "November 2001 Gas") to ENA during November 2001. The Spot Confirmations were each subject to Enron's general terms and conditions (the "GT & C" and, together with the Spot Confirmations, the "ENA/UES Contracts"), which were specifically incorporated into the Spot Confirmations. Each of these transactions were completed through ENA's internet-based online energy trading system known as Enron Online. UES executed the Spot Confirmations subject to the standard GT & C terms.

In pertinent part, the GT & C provides that:

> Title to gas scheduled hereunder shall pass from Seller [UES] to Buyer [ENA] at the Delivery Point(s). Each party assumes all liability for and shall indemnify, defend and hold harmless the other party from any claims, including death of persons, rising from any act or incident occurring when title to gas is vested in the indemnifying party.

(GT & C ¶ 6.)

Pursuant to the ENA/UES Contracts, ENA received shipments of natural gas from UES in November 2001. ENA was unable to pay for those shipments in December 2001. ENA attributes its failure to pay UES to the commencement of ENA's chapter 11 case.

UES asserts, as agent for Texas Producers, that it is entitled to a secured claim against ENA's chapter 11 estate by virtue of a Texas statute, which provides, in part:

> a security interest in favor of interest owners as secured parties, to secure the obligations of the first purchaser of oil and gas production, as debtor, to pay the purchase price.

TEX. BUS. & COM. CODE, Art. 9.343(a). UES asserts a secured claim in excess of $2,000,000.00, plus interest and attorneys fees.

In entering into the ENA/UES Contracts, UES was operating as an agent for the Texas Producers. The ENA/UES Contracts do not indicate that UES was operating as agent for the Texas Producers or that the November 2001 Gas may be subject to a security interest or lien by virtue of Section 9.343. UES does not dispute that the ENA/UES Contracts were executed on behalf of undisclosed principals. UES supports its assertion that UES acted as agent for Texas Producers based upon certain contracts between UES and Texas Producers ("Producer Agreements"). The Producer Agreements are appended to the UES proof of claim.

In March 2002, UES filed a motion under section 363 of the Bankruptcy Code for adequate protection of its asserted security interest in cash collateral. At the hearing on UES's motion, the Court ordered ENA to provide UES with advance notice in the event that ENA's cash on hand decreased to a level that jeopardized UES's asserted claim. To date, no such notice has been provided to UES because ENA's cash position has not decreased to a level that would jeopardize UES's asserted claim.

Thereafter, UES filed a second motion requesting, among other things, that the Court modify the automatic stay under section 362(d)(1) & (2). In response, ENA argued that UES's asserted security interest had not yet been proven. In addition, ENA filed an objection to the UES proof of claim. At the hearing to consider the motion to modify the automatic stay, the Court set a discovery schedule and a deadline for dispositive motions. In turn, UES filed a motion for summary judgment requesting, among other things, that the Court enter an order allowing UES's claim as a secured claim. The Court held hearings on UES's motion for relief from the automatic stay and motion for summary judgment on February 21, 2003 and September 3, 2003. On September 3, 2003 the Court held an evidentiary hearing to address the applicability of certain "safe harbors" under Section 9.343. The safe harbor issues were addressed in the event that the Court ultimately concluded that UES was a first purchaser as that term is defined under Texas law (described below). The record was fully submitted for decision in October 2003.

## III. Discussion

■ Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr.P. 7056(c). The court's responsibility is not to decide issues of fact, but rather to determine whether factual issues exist to be tried, *LaFond v. General Physics Services Corp.*, 50 F.3d 165, 171 (2d Cir.1995), resolving all ambiguities in favor of the party against whom summary judgment is sought. *See United States v. Rem*, 38 F.3d 634, 643 (2d Cir.1994). Here, both parties agree that there are no genuine issues of material fact to forestall summary judgment on the issue of whether ENA is a "first purchaser" as that term is defined under Texas law.[1] The resolution of this issue requires an examination of Section 9.343 of the Texas Business and Commerce Code.

Section 9.343 provides, in pertinent part, that:

---

1. The parties agree that Texas law applies here. *See generally Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law.")

This section provides a security interest in favor of interest owners, as secured parties, to secure the obligations of the first purchaser of oil and gas production, as debtor, to pay the purchase price. An authenticated record giving the interest owner a right under real property law operates as a security agreement created under this chapter. The act of the first purchaser in signing an agreement to purchase oil or gas production, in issuing a division order, or in making any other voluntary communication to the interest owner or any governmental agency recognizing the interest owner's right operates as an authentication of a security agreement. . . .

TEX. BUS. & COM. CODE, Art. 9.343(a) (hereafter "Section 9.343(x)").

Section 9.343 is a non-uniform provision of the Uniform Commercial Code designed to improve the creditor position of interest owners in bankruptcy cases. *See* Cynthia C. Grinstead, Note, *The Effect Of Texas U.C.C. Section 9.319 On Oil And Gas Secured Transactions*, 63 Tex. L.Rev. 311, 311 (1984) ("*Grinstead*") (analyzing substantively identical predecessor to Section 9.343); *see also In re Tri–Union Dev. Corp.*, 253 B.R. 808, 811 (Bankr.S.D.Tex. 2000) (characterizing statute as "non-standard"). An interest owner, in relevant part, is a person owning an entire or fractional interest of any kind or nature in oil or gas production at the time of severance. Section 9.343(r)(2).

■ As originally promulgated under Section 9.319, the Texas statute was enacted in the wake of several bankruptcies by crude oil purchasers in which interest owners were treated as general unsecured creditors. *See In re Tri–Union Dev. Corp.*, 253 B.R. at 811 (examining reasons for the enactment of section 9.319); Terry I. Cross & Jason T. Barnes, *Oil And Gas Liens & Foreclosures—A Multi–State*

*Perspective,* 51 Okla. L.Rev. 175, 206 (1998) ("*Cross & Barnes*") (naming the failed crude oil purchasers that precipitated the legislative response in Texas). In order to protect interest owners in the event of a bankruptcy filing by an oil or gas purchaser, Section 9.343 provides interest owners a security interest in oil and gas production as security for the payment of the purchase price. *In re Tri–Union Dev. Corp.*, 253 B.R. at 811; *see also In re Prudential Energy Co.*, 58 B.R. 857, 862 (Bankr.S.D.N.Y.1986) ("[S]ection [9.343] generally provides a security interest in favor of interest holders to secure the obligation of the first purchaser of oil and gas production to pay the purchase price.").

■ Section 9.343 mirrors the creation of a consensual contractual security interest by deeming that certain standard conveyancing and marketing instruments fulfill the documentation requirements imposed by article 9. *See Cross & Barnes,* 51 Okla. L.Rev. at 207 ("The Texas statute . . . attempted to conjure a consensual, contractual security interest from the typical production marketing transaction by 'deeming' standard conveyancing and marketing instruments to fulfill the documentation requirements imposed by article 9 of the U.C.C."); *see also* Terry I. Cross, *Oil And Gas Product Liens–Statutory Security Interests For Producers And Royalty Owners Under The Statutes Of Kansas, New Mexico, Oklahoma, Texas And Wyoming,* 50 Consumer Fin. L.Q. Rep. 418, 418–19 (1996) ("*Cross*") (same). In general under Texas law, a security interest attaches when the debtor signs a security agreement with a description of the collateral, the secured party gives value, and the debtor acquires rights in the collateral. *See* TEX. BUS. & COM.CODE ANN. § 9.203(b); *see also Grinstead,* 63 Tex. L.Rev. at 323–24 (analyzing attachment

of security interests under Texas law). Section 9.343(a), in contrast, provides that "[a]n authenticated record giving the interest owner a right under real property law operates as a security agreement...."

Under Section 9.343(a), the party providing the security interest (first purchaser) will not be a party to the authenticated record that serves as the security agreement but will be deemed to have authenticated and adopted the security agreement by "signing an agreement to purchase oil or gas production, in issuing a division order, or in making any *other* voluntary communication to the interest owner or any governmental agency recognizing the interest owner's right...." *See* Section 9.343(a) (emphasis added); *Cross,* 50 Consumer Fin. L.Q. Rep. at 421 (citing former Section 9.319(a)). In the event that there is no writing which gives the interest holder a right under real estate law or the first purchaser does not make a voluntary communication to the interest owner acknowledging his or her rights to the oil and/or gas property or its proceeds, then an interest owner may still be entitled to a statutory lien. *See* Section 9.343(d) [2]; 66 Tex. Jur.3d *Secured Transactions* § 140 (2003) ("[A] lien is created by Revised Article 9 that secures the rights of any person who would be entitled to a security interest under this provision, except for lack of any adoption of a security agreement by the first purchaser or a lack of possession or record as otherwise required for the security interest to be enforceable."); *Cross,* 50 Consumer Fin. L.Q. Rep. at 421 ("[E]ven if there is no 'signed writing' evidencing the interest owner's rights, or the signed writ-

ing is not 'adopted' by the first purchaser, interest owners still have recourse in that section [9.343(d) ] creates a special statutory lien for any interest owner who does not claim under a signed writing or whose 'security agreement' is not 'adopted' by the first purchaser."); *see also Grinstead,* 63 Tex. L.Rev. at 311 n. 3 (noting same).

The parties do not dispute that the Texas Producers are interest owners under Section 9.343. Further, no party disputes that there is a writing which gives the Texas Producers a right under real estate law such as by deed, oil and gas lease or mineral assignment to the November 2001 Gas. The parties do dispute whether ENA is a first purchaser as defined in Section 9.343(r)(3) and ultimately whether the Texas Producers have a secured claim under Section 9.343(a).

Section 9.343(r)(3) defines, in pertinent part, "first purchaser" to mean "the first person that purchases oil and gas production from an operator or interest owner after the production is severed...." Absent ambiguity, Texas law provides that a statute should be interpreted in accordance with its ordinary and plain meaning. *See Sorokolit v. Rhodes,* 889 S.W.2d 239, 241 (Tex.1994) ("If language in a statute is unambiguous, this court must seek the intent of the legislature as found in the plain and common meaning of the words and terms used."). Where the statute does not define a particular term, courts are to apply such terms ordinary meaning. *See Texas v. Public Utility Comm'n of Texas,* 883 S.W.2d 190, 200 (Tex.1994) ("In construing a statute, if the legislature does not define a term, its ordinary meaning

---

2. Section 9.343(d) provides:
   This section creates a lien that secures the payment of all taxes that are or should be withheld or paid by the first purchaser and a lien that secures the rights of any person who would be entitled to a security interest

under Subsection (a) except for lack of any adoption of a security agreement by the first purchaser or a lack of possession or record required by Section 9.203 for the security interest to be enforceable.

will be applied.") (applying Black's Law Dictionary definition). Neither party argues that Section 9.343(r) is ambiguous. In defining the term of art "first purchaser," the Texas legislature did not define the meaning of the word purchase. The Court will apply the ordinary definition of the word purchase. In pertinent part, "purchase" is "[t]he act or an instance of buying." *Black's Law Dictionary* (7th ed.1999).

ENA argues that the ENA/UES Contracts are not "first purchaser" transactions and therefore ENA is not a first purchaser as defined by Texas law. ENA asks the Court to consider the terms of the ENA/UES Contracts that document each of these transactions. According to ENA, the ENA/UES Contracts are clear and unambiguous in providing that UES had title to the November 2001 Gas and that title would transfer from UES to ENA and ENA's specified delivery points. Because it is undisputed that UES is not a producer, ENA argues that UES's representation that it held title indicates that UES had title from some third party. ENA contends that by agreeing to these unambiguous terms, UES should be precluded from arguing otherwise and for that reason the November 2001 Gas transactions were not first purchaser transactions under Texas law.

There are fundamental problems with ENA's interpretation of the statute. ENA's assertion that title may have been vested in UES is not responsive to the question of whether ENA is a "first purchaser" under Texas law. Section 9.343(r)(3) does not define a first purchaser in terms of title. Rather, the statute, in relevant part, defines a first purchaser in

terms of whether a person buys the oil or gas production from a statutorily protected party (e.g., an interest owner). ENA's theory relies on the premise that if UES had title, then UES (or perhaps some other party) must have been the first buyer of the November 2001 Gas. The Producer Agreements do not support this assertion.

The Producer Agreements do not embody any type of buying or selling of gas or oil production between UES and any of the Texas Producers. The Producer Agreements are agency agreements whereby UES agreed to market and sell the Texas Producers' natural gas for the Texas Producers' benefit. Although UES may have at one time possessed the November 2001 Gas in order to facilitate the transaction with ENA, there is no indication that UES bought or purchased the gas in order to qualify as a first purchaser. Accordingly, UES cannot be, as a matter of law, a first purchaser under Texas law because UES never bought the November 2001 Gas that was subject to the ENA/UES Contracts.[3]

In contrast, the ENA/UES Contracts do indicate a sale of the November 2001 Gas. The ENA/UES Contracts clearly provide for the sale of gas between ENA and UES. Because the parties do not contend that there was any other transaction involving the November 2001 Gas, ENA is clearly the first entity to have actually purchased the November 2001 Gas. Thus, the fact that the ENA/UES Contracts indicate that UES may have been transferring title to ENA for the November 2001 Gas does not necessarily mean that ENA would not qualify as a first purchaser under Texas law. The Court, however, does not need to reach the issue because even

---

**3.** Although ENA has suggested that UES misrepresented the transaction and that UES should be precluded from arguing that the ENA/UES Contracts are first purchaser transactions, the Court does not reach the issue of what, if any, equitable considerations might warrant deeming UES the first purchaser under Texas law.

assuming, arguendo, that ENA was the first purchaser of the November 2001 Gas, there is no indication that ENA assented to or adopted the security agreement as required under Texas law.[4] Accordingly, the Texas Producers do not have secured claims under Section 9.343(a).

The elements for the creation of a security interest under Section 9.343(a) are as follows:

1) a writing which gives the interest holder a right under real estate law (i.e. a deed, oil and gas lease, mineral assignment, etc.); and 2) the act of the first purchaser making a voluntary communication to the interest owner acknowledging his or her rights to the oil and/or gas property or its proceeds.

*In re Tri–Union Development Corp.*, 253 B.R. at 811.

The parties do not dispute the first element, therefore, the Texas Producers do have rights under real estate law. As a matter of law, however, the ENA/UES Contracts fail to comply with the second element. Specifically, nothing in the ENA/UES Contracts can be interpreted or construed to indicate a voluntary communication from ENA acknowledging the Texas Producers rights under real estate law to the November 2001 Gas and/or its proceeds. The Spot Confirmations ENA

delivered to UES only indicate, in pertinent part, the period of delivery, the tier of gas, the daily contract quantity, the delivery point(s) and the contract price. Likewise, the GT & C (as incorporated into the Spot Confirmations) contain no express terms recognizing an interest owners' rights under real estate law to the November 2001 Gas or even that an interest owner may be involved in the transaction.[5] Indeed, UES points out that the ENA/UES Contracts contain no express warranties concerning title to the November 2001 Gas. Even though the ENA/UES Contracts did not expressly exclude or condition the transaction upon the Seller not being an interest owner or upon the November 2001 Gas being free of all liens and encumbrances, in the Court's view, the risk that the standard terms of the Spot Confirmations and GT & C were insufficient to create a security interest fell squarely upon the Texas Producers. The Court therefore denies UES's motion for summary judgment on the issue that the Texas Producers have security interests. The terms of the ENA/UES Contracts are insufficient to create security interest under Section 9.343(a). The Court will enter summary judgment in ENA's favor sua sponte without requiring ENA to file a formal motion.[6]

4. Because of the Court's ultimate conclusion that the Texas Producers are not entitled to a security interest under Section 9.343(a), the Court does not reach the issue of whether ENA can qualify as a first purchaser under the facts presented here.

5. In contrast, Section 9.343(r)(3) does not require a buyer of oil and gas production to acknowledge anything in particular in order to qualify as a first purchaser.

6. The Court expresses no opinion whether UES is entitled to a statutory lien under Section 9.343(d), and if so, whether such lien may be avoidable under section 545 of the Bankruptcy Code. Moreover, without reaching the issue, it appears that a statutory lien would not continue in the proceeds of any sale by the first purchaser. *See* Section 9.343(e) ("The security interests and liens created by this section have priority over any purchaser who is not a buyer in the ordinary course of the first purchaser's business, but are cut off by the sale to a buyer from the first purchaser who is in the ordinary course of the first purchaser's business under Section 9.320(a). But in either case, whether or not the buyer from the first purchaser is in ordinary course, a security interest will continue in the proceeds of the sale by the first purchaser as provided in Subsection [9.343](c)."). A plain reading of the statute would suggest that only a security interest

Although the practice of granting summary judgment sua sponte without notice is generally discouraged in this circuit, a court may enter summary judgment where the moving party would not be procedurally prejudiced. *See Bridgeway Corp. v. Citibank*, 201 F.3d 134, 139 (2d Cir.2000). The inquiry concerning procedural prejudice examines whether the moving party would be surprised by the court's action and whether that surprise results in the party failing to present evidence in supports of its position. *See Bridgeway Corp. v. Citibank*, 201 F.3d at 139. The likelihood of procedural prejudice is diminished if the court grants summary judgment on issues identical to the issues raised by the moving party. *See id.* at 140. Notwithstanding the basis for granting summary judgement, however, "where it appears clearly upon the record that all of the evidentiary materials that a party might submit in response to a motion for summary judgment are before the court, a *sua sponte* grant of summary judgment against that party may be appropriate if those materials show that no material dispute of fact exists and that the other party is entitled to judgement as a matter of law." *Id.* (emphasis in original) (citing *Ramsey v. Coughlin*, 94 F.3d 71, 73–4 (2d Cir.1996)). Here, summary judgment is appropriate because UES is not procedurally prejudiced. It appears that all of the evidentiary materials that UES might submit in response to a motion for summary judgment are before the court and that those materials show that no material dispute of fact exists and that ENA is entitled to judgement as a matter of law. Therefore, the Court will enter summary judgment in ENA's favor sua sponte.

## IV. Conclusion

For the foregoing reasons, the Court denies the Motion and summary judgment will be entered in ENA's favor. ENA should settle an order on five days' notice.

---

survives a sale of the oil and gas production and not a statutory lien.

Furthermore, even if a claimant fell within the auspices of the statute, some commentators have questioned whether the protections created under Section 9.343 would qualify as a statutory lien under section 101(53) of the Bankruptcy Code. *See, e.g., Cross & Barnes*, 51 Okla. L.Rev. at 207. ("Because the section [9.343] liens in fact arise through the operation of the statute rather than as a consequence of consensual agreement, there is some risk that the various statutory provisions that distinguish between statutory liens and consensual liens could still be construed to apply to the section [9.343] liens as if they were statutory liens.... In bankruptcy, the resolution of whether the section [9.343] liens [fall within the definition of statutory lien under the Bankruptcy Code] will determine whether the drafters succeeded in legislating a nonstatutory lien.").