**In re ENRON NORTH AMERICA CORP., Debtor.**

**Upstream Energy Services, Appellant,**

**v.**

**Enron North America Corp., Appellee.**

**No. 04 Civ. 2191 (JGK).**

United States District Court,
S.D. New York.

July 22, 2004.

Brian Scott Rosen, Stephen T. Loden, Weil, Gotshal & Manges, LLP, New York City, for Debtor.

Barry A. Brown, Barry A. Brown, PC, Houston, TX, for Upstream Energy Services.

### OPINION and ORDER

KOELTL, District Judge.

This is an appeal pursuant to 28 U.S.C. § 158(a)(1) from an order of the Bankrupt- cy Court denying motions by Upstream Energy Services ("UES") for relief from stay and for summary judgment and granting summary judgment in favor of Enron North America Corp. ("ENA"). *See In re Enron Corp.,* 302 B.R. 455 (Bankr.S.D.N.Y.2003). The underlying dispute arises out of the sale of natural gas to ENA by UES, which was allegedly act- ing as an agent on behalf of undisclosed principals, certain Texas gas producers (the "Texas Producers"). This appeal in- volves whether, under Texas Business and Commerce Code § 9.343(a), UES on behalf of the Texas Producers can assert a se- cured claim against ENA's chapter 11 es- tate for the proceeds from the sale of the gas. The Bankruptcy Court ruled that as a matter of law UES does not have a secured claim, and it granted summary judgment in ENA's favor. The Bankrupt- cy Court's decision, however, was based on an interpretation of the Texas statute not advanced by ENA, and UES argues on appeal that the Bankruptcy Court misin- terpreted Texas law when it granted sum- mary judgment in ENA's favor.[1]

A district court generally reviews the findings of fact of a bankruptcy court under a "clearly erroneous" standard, *see* Fed. R. Bankr.P. 8013, but conclusions of law are reviewed *de novo. See, e.g., Shu- grue v. Air Line Pilots Assoc. Int'l (In re Ionosphere Clubs, Inc.),* 922 F.2d 984, 988 (2d Cir.1990); *Nova v. Premier Opera- tions (In re Premier Operations),* 294 B.R. 213, 217 (S.D.N.Y.2003). A bankruptcy court's decision to grant summary judg- ment is reviewed *de novo* because the exis-

---

1. UES has identified four issues on appeal. (*See* UES Designation of the Record and Statement of Issues on Appeal at 3.) The first three issues are simply reiterations of whether the Bankruptcy Court erred in finding that UES's claim was not secured under § 9.343(a). The fourth issue is a procedural challenge to the Bankruptcy Court granting summary judgment in favor of ENA *sua sponte,* but UES did not specifically pursue that issue on appeal.

tence of issues of material fact is a question of law. *See Jacobowitz v. Cadle Co. (In re Jacobowitz)*, 309 B.R. 429, 435 (S.D.N.Y.2004); *Hanover Direct, Inc. v. T.R. Acquisition Corp. (In re T.R. Acquisition Corp.)*, 309 B.R. 830, 835 (S.D.N.Y. 2003). In any event, the issue presented on appeal is purely an issue of law involving whether the Bankruptcy Court correctly interpreted Tex. Bus. & Com.Code § 9.343(a) in requiring that there could not be a secured claim without ENA expressly recognizing the rights of the Texas Producers as interest owners of the gas.

## I.

At the argument on appeal the parties agreed that the Bankruptcy Court's Memorandum opinion accurately characterized the facts underlying the dispute, and those facts are described herein to the extent necessary for the appeal.[2]

In October 2001, ENA and UES executed a series of agreements (the "Spot Confirmations") for the delivery of natural gas to ENA during November 2001. *In re Enron*, 302 B.R. at 457. The transactions were completed through ENA's internet-based energy trading system known as Enron Online and were subject to Enron's general terms and conditions ("GT & C"). *Id.* In pertinent part, the GT & C provided that:

> Title to gas scheduled hereunder shall pass from Seller [UES] to Buyer [ENA] at the Delivery Point(s). Each party assumes all liability for and shall indemnify, defend and hold harmless the other party from any claims, including death of persons, rising from any act or inci-

dent occurring when title to gas is vested in the indemnifying party.

*Id.* (quoting GT & C ¶ 6.) In early December 2001, after ENA had received the gas, it filed for chapter 11 bankruptcy and was unable to pay for the shipments when they became due. *See id.*

In July 2002, UES filed a Proof of a Claim in the ENA bankruptcy as an agent for the Texas Producers, which UES asserts were undisclosed principals holding title to the gas delivered under the ENA/UES contracts. The claim is asserted against cash collateral in the form of proceeds that ENA had obtained from reselling the gas and had deposited in a debtor-in-possession account. (*See* Mot. for Relief from Stay ("Stay Mot.") ¶¶ 3–5, attached at R. 2.)[3] UES has argued that the claim is secured pursuant to a non-uniform provision of the Texas Uniform Commercial Code ("UCC") that

> provides a security interest in favor of interest owners, as secured parties, to secure the obligations of the first purchaser of oil and gas production, as debtor, to pay the purchase price. An authenticated record giving the interest owner a right under real property law operates as a security agreement created under this chapter. The act of the first purchaser in signing an agreement to purchase oil or gas production, in issuing a division order, or in making any other voluntary communication to the interest owner or any governmental agency recognizing the interest owner's right operates as an authentication of a security agreement . . . .

dered ENA to provide UES with notice in the event that ENA's cash on hand reached a level that jeopardized UES's claim, but ENA's cash position has not decreased to such a level. *See id.*

---

**2.** Citations to items included in UES's Designation of the Record are indicated as "R. __."

**3.** In March 2002, pursuant to 11 U.S.C. § 363, UES filed a motion to protect its interest in the cash collateral. *See In re Enron*, 302 B.R. at 458. The Bankruptcy Court or-

Tex. Bus. & Com.Code § 9.343(a). There is no dispute that the Texas Producers are "interest owners" as defined under Tex. Bus & Com.Code § 9.343(r)(2).[4] *See In re Enron*, 302 B.R. at 460. However, because the principals were not disclosed and because certain terms of the GT & C referred to title to the gas as passing from UES to ENA, ENA disputes that it can be considered a "first purchaser" as defined by § 9.343(r)(3),[5] and it disputes that a security interest under § 9.343(a) was created. *See In re Enron*, 302 B.R. at 460.

These issues arose in October 2002, when UES filed a motion under 11 U.S.C. § 362(d)(1) & (2) for relief from an automatic stay so that UES could pursue its claim for the cash collateral. (*See* Stay Mot. ¶¶ 11–12); *see also In re Enron*, 302 B.R. at 458. ENA responded by contesting UES's security interest and filing an objection to UES's Proof of Claim. (*See* R. 3 (ENA's objection).) After the Bankruptcy Court set a schedule for discovery and dispositive motions, UES moved for summary judgment on, among other things, its entitlement to a secured claim. (*See* R. 4, 5 (UES's motion for summary judgment, including its statement of uncontested material facts pursuant to Local Bankruptcy Rule 7056–1, and UES's memorandum of law in support thereof)); *see also In re Enron*, 302 B.R. at 458. ENA opposed the motion and cross-moved for summary judgment on its objections to the Proof of Claim. (*See* R. 6, 7 (ENA's memorandum in opposition to UES's motion for summary judgment and in support of ENA's cross-motion, and ENA's respon-

sive Rule 7056–1 statement).) ENA argued that it should not be considered a "first purchaser" under Texas law based on the ENA/UES contracts and that UES should be estopped from arguing that the transactions are first purchaser transactions. The Bankruptcy Court held hearings on the motions, including an evidentiary hearing to determine the applicability of certain safe harbors under Tex. Bus. & Com.Code § 9.343(m). *See In re Enron*, 302 B.R. at 458.

In its Memorandum Decision dated December 17, 2003, the Bankruptcy Court discussed the history of § 9.343 and the issue of whether the contracts in question involved "first purchaser transactions." *Id.* at 459–62. Addressing ENA's arguments, the Bankruptcy Court noted that UES never actually bought the gas in question from the Texas Producers and that ENA was the first entity actually to purchase the gas from the Texas Producers. *Id.* at 461. The Bankruptcy Court, however, stated that it did not need to reach the of whether ENA was a first purchaser as defined under Texas law, nor did it reach the issue of whether UES was equitably estopped from asserting that ENA was a first purchaser. *Id.* at 461–62 & nn. 3, 4.

Instead, the Bankruptcy Court found that the ENA/UES contracts did not create a secured claim for the Texas Producers because "there is no indication that ENA assented to or adopted the security agreement as required under Texas law."

---

4.  An "interest owner" is "a person owning an entire or fractional interest of any kind or nature in oil or gas production at the time of severance, or a person who has an express, implied, or constructive right to receive a monetary payment determined by the value of oil or gas production or by the amount of production." Tex. Bus. & Com.Code § 9.343(r)(2).

5.  A "first purchaser" is defined, in relevant part, as "the first person that purchases oil or gas production from an operator or interest owner after production is severed . . . ." Tex. Bus. & Com.Code § 9.343(r)(3).

*Id.* at 462. The Bankruptcy Court quoted a Texas district court case as requiring two elements for a security interest under § 9.343(a):

1) a writing which gives the interest holder a right under real estate law (i.e. a deed, oil and gas lease, mineral assignment, etc.); and 2) the act of the first purchaser making a voluntary communication to the interest owner acknowledging his or her rights to the oil and/ gas property or its proceeds.

*In re Enron*, 302 B.R. at 462 (quoting *In re Tri–Union Dev. Corp.*, 253 B.R. 808, 811 (Bankr.S.D.Tex.2000)). The Bankruptcy Court stated that there was no dispute that the first element was satisfied but found that the second element, as described by *Tri–Union*, was not. *Id.* The Bankruptcy Court interpreted § 9.343(a) as requiring "a voluntary communication from ENA acknowledging the Texas Producers right under real estate law to the November 2001 Gas and/or its proceeds." *Id.* It found that the standard terms of the Spot Confirmations and GT & ·C were insufficient to authenticate any security agreement because they "contain[ed] no express terms recognizing an interest owner's rights under real estate law to the November 2001 Gas or even that an interest owner may be involved in the transaction." *Id.* Recognizing that ENA had not sought summary judgment on this basis, the Bankruptcy Court explained that it would "enter summary judgment in ENA's favor sua sponte." *Id.*

## II.

■ Section 9.343 of the Texas Business and Commercial Code, originally codified as Tex. Bus. & Com.Code § 9.319,[6] is a non-uniform provision of Texas UCC enacted in response to the "oil and gas bust" of the 1980s, which forced several large oil and gas operators and purchasers into bankruptcy. *See In re Tri–Union Dev. Corp.*, 253 B.R. at 811. The Texas legislature decided to protect oil and gas interest owners "through the creation of a security interest in favor of interest owners to secure the obligation of the first purchaser of oil and gas production to pay the purchase price." *Id.* Interest owners would not need to obtain "either a written agreement for attachment of the lien or the filing of a financing statement." *Id.* Instead, they would automatically possess a security interest through the operation of § 9.343, which, as the Bankruptcy Court recognized, was designed to "mirror[ ] the creation of a consensual security interest by deeming that certain standard conveyancing and marketing instruments fulfill the documentation requirements imposed by article 9 [of the U.C.C.]." *See In re Enron*, 302 B.R. at 459. Thus, § 9.343(a) provides that

[a]n authenticated record giving the interest owner a right under real property law operates as a security agreement created under this chapter. The act of the first purchaser in signing an agreement to purchase oil or gas production, in issuing a division order, or in making any other voluntary communication to the interest owner or any governmental agency recognizing the interest owner's right operates as an authentication of a security agreement in accordance with Section 9.203(b) for purposes of this chapter.

Tex. Bus. & Com.Code. § 9.343(a);[7] *cf.* Tex. Bus. & Com.Code § 9.203(b) (provid-

---

6. The text of § 9.343 is substantively the same as when the provision was codified as § 9.319. *See* Tex. Bus. & Com.Code § 9.343 State Bar Comm. cmt. ¶ 2.

7. Section 9.343(b) provides that the security interest is "perfected automatically without the filing of a financing statement." In addition, subsection (d)

ing conditions for enforceability of security interests under Texas law generally).

The dispute on appeal is over the phrase "recognizing the interest owner's right" and whether it applies to all of the acts of a first purchaser listed in the provision. UES argues that the phrase applies only to the last antecedent—"any other voluntary communication to an interest owner or government agency"—and that the acts of signing a purchase agreement or issuing a division order automatically create a security interest without any need for those documents to recognize expressly the interest owner's right. The Bankruptcy Court's ruling, which ENA now adopts, interprets the phrase as applying to any act by the first purchaser · and thus as requiring express recognition of an interest owner's right whether it be in a purchase agreement, division order, or any other voluntary communication.

UES's interpretation of the statutory language is correct. The statute provides a security interest for interest owners where: (1) there is an authenticated record giving the interest owner a right under real property law; and (2) the first purchaser acts by (a) signing a purchase agreement for oil or gas production, (b) issuing a division order, or (c) making any other voluntary communication to the interest owner or any government agency recognizing the interest owner's right. *See* Tex. Bus. & Com.Code § 9.343(a). In the second element, the first two mechanisms—signing a purchase agreement for oil or gas production and issuing a division order—are specific; they both contain statutorily defined phrases and reflect

standard instruments for conveying or marketing oil and gas. *See* Tex. Bus. & Com.Code § 9.343(r)(1) (defining "oil and gas production"); Tex. Nat. Res.Code. § 91.401(3) (defining "division order"). Consistent with the statutory text and purpose, each of those instruments is sufficient in itself to authenticate the security agreement so as to protect interest owners in the normal course of oil and gas transfers.

The third mechanism—"any other voluntary communication"—is a general catch-all provision, and the phrase "recognizing the interest owner's right" is necessary to provide meaning to that general mechanism. Without such a limitation, a security interest would be created by any voluntary communication from the first purchaser to the interest owner even if that communication had nothing to do with supporting the interest owner's right to the proceeds of the sale of oil and gas production. By providing substance to the general mechanism, the phrase at issue extends the protection of interest owners to certain situations where oil and gas is not transferred through the two standard instruments. The text of the provision, in light of its purpose, does not indicate that the phrase is also intended to qualify the specific mechanisms, thereby limiting the role of purchase agreements and division orders in creating automatically perfected security interests.

The Bankruptcy Court's interpretation of the provision is inconsistent with the statute's grammatical structure and purpose. That interpretation would render

creates a lien that secures the payment of all taxes that are or should be withheld or paid by the first purchaser and a lien that secures the rights of any person who would be entitled to a security interest under Subsection (a) except for lack of any adoption of a security agreement by the first purchas-

er or a lack of possession or record required by Section 9.203 for the security interest to be enforceable.

Tex. Bus. & Com.Code § 9.343(d). The parties on appeal are not pursuing any arguments for a lien under subsection (d).

the specific mechanisms superfluous, or would at least turn them into mere examples of vehicles for recognizing an interest owner's right. If that were the legislature's intent, it could have stated directly that a first purchaser can authenticate a security agreement by recognizing the interest owner's right through a voluntary communication such as signing a purchasing agreement for oil and gas production, issuing a division order, or making any other voluntary communication to the interest owner or government agency. But the language and structure of the sentence do not suggest that the specific mechanisms are illustrative. Moreover, to the extent that oil and gas transactions, such as the one in this case, involve ready-made or industry-standard contracts with little independent negotiation, requiring express recognition of the interest owner's right could undermine the purpose of using the standard instruments to protect oil and gas interest owners in the ordinary course of business.[8]

The cases cited by ENA on appeal do not support the Bankruptcy Court's ruling or undermine this Court's reading of the statute. *Tri–Union*, on which the Bankruptcy Court relied, paraphrased the second element of § 9.319(a), now § 9.343(a), as involving "the act of the first purchaser making a voluntary communication to the interest owner acknowledging his or her rights to the oil and gas property or its proceeds." *In re Tri–Union Dev. Corp.*,

253 B.R. at 811. *Tri–Union*, however, did not involve a dispute over the second element, and its description of that element cannot be considered a definitive or precise interpretation of the statute. *See id.* at 811–12 (stating issues as whether debtor qualified as first purchaser and whether all claims by royalty owners constituted claims by "interest owners"). For example, while *Tri–Union* referred only to "a voluntary communication to the interest owner," a voluntary communication to a government agency recognizing an interest owner's right is plainly sufficient to authenticate a security interest. *Compare id.* at 811, *with* Tex. Bus. & Com.Code § 9.343(a). Purchase agreements and division orders are voluntary communications that may often acknowledge an interest owner's right expressly or implicitly. But the Texas district court clearly did not consider the full range of possible transfers, and its paraphrasing, while sufficient for the purposes of that decision, does not require abandoning the plain reading of the statute described above.[9]

ENA is a sophisticated party with respect to the underlying transactions and the litigation involving them. But ENA never advanced the interpretation of the statute articulated by the Bankruptcy Court. Instead, ENA presumed that first-purchaser purchasing agreements in themselves can authenticate a security interest, and it argued that it was not a first pur-

---

**8.** ENA's argument that UES's construction of the statute provides too much protection and would allow for a "lien by sandbagging" is unpersuasive. If the Texas Producers are ultimately entitled to a secured claim, ENA will be required to pay the Texas Producers for their gas rather than diverting to other creditors the proceeds that ENA obtained from reselling the gas. Section 9.343 was designed precisely to protect oil and gas producers over other creditors where purchasers have gone bankrupt.

**9.** ENA also cites *Koch Oil Co. v. B.E. Wilber*, 895 S.W.2d 854 (Tex.Ct.App.1995), but in *Koch*, the court merely quoted § 9.343(a) in full and then concluded: "We find that neither Tesoro nor Koch made any agreement, division order, or any voluntary communication with any appellee recognizing the interest owned by appellee, [and] therefore this statute does not apply to the case at hand." *Id.* at 867. *Koch's* restatement of the statute does not shed any light on the question at issue in this case.

chaser and that UES should be estopped from asserting that ENA was one. The primary point underlying ENA's arguments both to the Bankruptcy Court and this Court is that UES was acting as an agent for an undisclosed principal, and thus ENA allegedly had no way of knowing that it was taking title to the oil and gas as a first purchaser from an interest owner and was thereby subject to the security interest of the Texas Producers. But ENA's assertions of equitable considerations are appropriately handled through the arguments it initially advanced to the Bankruptcy Court and not by reconfiguring the statute.

■■■■■ Having found that UES could not assert a secured claim under the terms of the statute, the Bankruptcy Court did not reach the issues of whether ENA was a first purchaser as defined by Texas law or whether UES could be equitably estopped from asserting that the contracts were first purchaser transactions. These issues should be decided by the Bankruptcy Court in the first instance. The estoppel argument, in particular, should be addressed in the first instance by the Bankruptcy Court because arguments under such equitable doctrines are committed to the sound discretion of the Bankruptcy Court. *See Sunbeam Prods., Inc. v. Wing Shing Prods. (BVI) Ltd.,* 311 B.R. 378, 395–96 (S.D.N.Y.2004).[10]

### Conclusion

The order of the Bankruptcy Court granting summary judgment in favor of ENA is **reversed,** and the case is **remanded** for a determination of the outstanding issues that were raised by the motions for summary judgment and not reached · by the Bankruptcy Court.

**SO ORDERED.**

---

10. UES has also argued that even if UES were considered a first purchaser, the Texas Producers are still entitled to a secured claim against ENA because ENA allegedly failed to comply with a safe-harbor provision for next purchasers under Tex. Bus. & Com. § 9.343(m). The Bankruptcy Court, however, found it necessary to hold an evidentiary hearing on the issue but did not make any factual findings on the issue in its Memorandum Opinion. In addition, the issue, being raised on appeal only in UES's reply papers, was not sufficiently briefed for this Court.