312 B.R. 318 (2004)
In re AURORA NATURAL GAS, L.L.C., AND Holdings, L.L.C., GPR Holdings, L.L.C., Golden Prairie Supply Services, L.L.C., Debtors.
Edge Petroleum Operating Co., Inc., Plaintiff,
v.
Duke Energy Trading and Marketing, L.L.C., Defendant.
Bankruptcy Nos. 01-36709-SAF-7, 01-36900-SAF-11, 01-36736-SAF-11, 01-36904-SAF-7. Adversary No. 03-3564.
United States Bankruptcy Court, N.D. Texas, Dallas Division.
July 9, 2004.
*320 Barry A. Brown, Barry A. Brown, P.C., Houston, TX, Counsel for Edge Petroleum Operating Co., Inc.
John C. Wynne, Andrews & Kurth, LLP, Houston, TX, Counsel for Duke Energy Trading and Marketing, LLC.
Nicholas A. Foley, Neligan Tarpley Andrews & Foley LLP, Dallas, TX, Counsel for GPR Holdings, L.L.C.

MEMORANDUM OPINION AND ORDER
STEVEN A. FELSENTHAL, Chief Judge.
The parties request that the court resolve this litigation on summary judgment. Edge Petroleum Operating Co., Inc., the plaintiff, has not been paid for natural gas sold to Aurora Natural Gas, LLC (Aurora), Golden Prairie Supply Services, LLC (Golden Prairie) and/or GPR Holdings, LLC (GPR), the intervenors/debtors, who, in turn, sold the natural gas to Duke Energy Trading and Marketing, LLC (Duke), the defendant, who, in turn, sold the natural gas to third persons. Edge moves for *321 summary judgment holding Duke liable for the payment of the gas and for conversion of Edge's interest in the gas under § 9.343 of the Tex. Bus. & Com.Code. Duke moves for summary judgment declaring that it has no liability to Edge. Golden Prairie, Aurora and GPR move for summary judgment contending, like Duke, that Edge did not have a security interest in the gas and that Edge cannot prove the elements of conversion. GPR, Aurora and Golden Prairie are debtors in bankruptcy cases pending before this court. They contend that Edge must pursue its claim for payment for the gas in their respective bankruptcy cases. The court conducted a hearing on the motions for summary judgment on April 7, 2004.
Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, and other matters presented to the court show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Washington v. Armstrong World Indus., Inc., 839 F.2d 1121, 1122 (5th Cir. 1988). On a summary judgment motion, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Anderson, 477 U.S. at 255, 106 S.Ct. 2505. A factual dispute bars summary judgment only when the disputed fact is determinative under governing law. Id. at 250,106 S.Ct. 2505.
The movant bears the initial burden of articulating the basis for its motion and identifying evidence which shows that there is no genuine issue of material fact. Celotex, 477 U.S. at 322, 106 S.Ct. 2548. The respondent may not rest on the mere allegations or denials in its pleadings but must set forth specific facts showing that there is a genuine issue for trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court applies the same standards to all three motions for summary judgment.
For summary judgment purposes, there is no genuine issue of material fact concerning the following. Edge produces natural gas. In May and June 2001, Edge sold natural gas to Aurora, Golden Prairie or GPR, the debtors, through its marketing agent, Upstream Energy Services Company. Under the parties' contractual arrangement, the debtors had an obligation to pay for the gas on the 25th day of the month following delivery. The debtors would pay for gas delivered in May by June 25, 2001, and for gas delivered in June by July 25, 2001.
Upon delivery of the gas, the debtors immediately commingled the gas in the pipeline with other gas from other suppliers. The debtors immediately resold the gas purchased from Upstream to Duke.
The debtors assert that Duke did not pay the debtors for the gas. In late May 2001, Duke claimed that it overpaid the debtor for previous deliveries of gas from the debtors to Duke. Duke continued to trade with and purchase gas from the debtors. To recover the alleged overpayments, Duke credited portions of the purchases and deliveries of gas from the debtors against the pre-existing receivable. In separate litigation against Duke, GPR, Golden Prairie, and Robert Newhouse, the trustee for Aurora, seek to recover the accounts receivable and to avoid the credits under 11 U.S.C. § 547. GPR Holdings, LLC v. Duke Energy Trading and Marketing, LLC, adversary number 03-3430 (Bankr.N.D.Tex.).
*322 Duke immediately sold the gas purchased from the debtors in May and June 2001 to other purchasers. The gas in question has been used and no longer exists. Edge has not been paid for the gas. Edge has not filed a claim against the debtors in their respective bankruptcy cases. Aurora filed its bankruptcy petition on August 13, 2001; ANG Holdings, LLC, filed its bankruptcy petition on August 20, 2001; GPR filed its bankruptcy petition on August 14, 2001; Golden Prairie filed its bankruptcy petition on August 20, 2001.

Motion to Strike
Duke filed a motion to strike summary judgment evidence submitted by Edge with its reply to Duke's and the debtors' responses to Edge's motion for summary judgment. Duke reports that the debtors join in the motion to strike. Edge submitted the additional summary judgment evidence because it understood that Duke, in its summary judgment arguments, raised the issue of whether Edge was an interest owner. The additional summary judgment evidence addresses that issue. Duke states that the evidence had not been produced in discovery. Edge responds that Duke had not previously challenged or even questioned Edge's status as an interest owner and that the evidence was in Edge's files available for Duke's inspection.
The court's review of the record does not reflect that the debtors or Duke have contested that Edge is an interest owner. Frankly, the court questions why the issue has not been submitted on stipulation. If Duke had a good faith challenge to Edge's interest owner status, Duke surely would have raised the issue by appropriate motion in the two years the litigation has been pending before it had been transferred to this court. There is no genuine issue of material fact that Edge is an interest owner. The additional summary judgment evidence need not have been filed; yet Duke's motion to strike misses the issue. If Duke now contests what had been a non-issue, the court will consider Edge's summary judgment evidence. The court will deny Duke's motion to strike.

The Statute
Section 9.343 of the Texas Business and Commerce Code provides:
(a) ... a security interest in favor of interest owners, as secured parties, to secure the obligations of the first purchaser of oil and gas production, as debtor, to pay the purchase price. An authenticated record giving the interest owner a right under real property law operates as a security agreement created under this chapter. The act of the first purchaser in signing an agreement to purchase oil or gas production, in issuing a division order, or in making any other voluntary communication to the interest owner or any governmental agency recognizing the interest owner's right operates as an authentication of a security agreement in accordance with Section 9.203(b) for purposes of this chapter.
(b) The security interest provided by this section is perfected automatically without the filing of a financing statement....
(c) The security interest exists in oil and gas production, and also in the identifiable proceeds of that production owned by, received by, or due to the first purchaser:
(1) for an unlimited time if:
(A) the proceeds are oil or gas production, inventory of raw, refined, or manufactured oil or gas production, or rights to or products of any of those, although the sale of those proceeds by a first purchaser to a buyer in the ordinary course of business as provided in Subsection (e) cuts off the security interest in those proceeds;

*323 (B) the proceeds are accounts, chattel paper, instruments, documents, or payment intangibles; or
(C) the proceeds are cash proceeds, as defined in Section 9.102; and
(2) for the length of time provided in Section 9.315 for all other proceeds.
(d) This section creates ... a lien that secures the rights of any person who would be entitled to a security interest under Subsection (a) except for lack of any adoption of a security agreement by the first purchaser or a lack of possession or record required by Section 9.203 for the security interest to be enforceable.
Tex. Bus. & Com.Code § 9.343 (2002).
As for secondary purchasers, the statute provides:
(m) A person who buys from a first purchaser can ensure that the person buys free and clear of an interest owner's security interest or statutory lien under this section:
(1) by buying in the ordinary course of the first purchaser's business from the first purchaser under Section 9.320(a);
(2) by obtaining the interest owner's consent to the sale under Section 9.315(a)(1);
(3) by ensuring that the first purchaser has paid the interest owner or, provided that gas production is involved, or the interest owner has so agreed or acquiesced, by ensuring that the first purchaser has paid the interest owner's operator; or
(4) by ensuring that the person or the first purchaser or some other person has withheld funds sufficient to pay amounts in dispute and has maintained a tender of those funds to whoever shows himself or herself to be the person entitled.
Tex. Bus. & Com.Code § 9.343(m) (2002).

Edge's Security Interest
Edge contends that under this statute it has an automatically perfected security interest in the gas sold to the debtors and in the identifiable proceeds of that gas due to the debtors by Duke. There is no genuine issue of material fact that Edge produced the gas sold under a contract to the debtors. There is also no genuine issue of material fact that Edge held a recorded real property interest in the mineral estate from which Edge produced the gas. There is no genuine issue of material fact that for all the subject gas sales in this litigation, one of the debtors was the first purchaser as defined by § 9.343(r)(3) of the Texas Business and Commerce Code, which provides, in part, that a first purchaser is:
the first person that purchases oil or gas production from an operator or interest owner after the production is severed, or an operator that receives production proceeds from a third-party purchaser who acts in good faith under a division order or other agreement authenticated by the operator under which the operator collects proceeds of production on behalf of other interest owners.
Tex. Bus. & Comm.Code § 9.343(r)(3).
Duke and the debtors contend that the debtors, as first purchasers of the gas, did not sign an agreement to purchase gas, issue a division order or make any other voluntary communication to the interest owner recognizing the interest owner's right. Aurora and Upstream entered a standard Gas Industry Standards Board ("GISB") base contract. The debtors ordered gas deliveries from Upstream on GISB transaction confirmation forms. Neither the base contract nor the confirmation *324 forms mention Edge. But they unmistakably contain "an agreement to purchase... gas production." Tex. Bus. & Com.Code § 9.343(a).
Recently, the court in the case of In re Enron, 302 B.R. 455, 461-62 (Bankr. S.D.N.Y.2003) held that the base contracts and confirmation forms do not constitute voluntary communications to an interest owner recognizing the interest owner's right. Edge contends that the Enron court erred in its approach to the Texas protection of gas producers and interest owners. This court does not address that issue.
Section 9.343(a) provides three alternative methods for the first purchaser to trigger the security agreement authentication. The Enron court addressed the third alternative. The second alternative, issuing a division order, does not apply in this case. But there is no genuine issue of material fact that the first alternative exists, namely, a signed agreement to purchase gas production.
The base contract is a signed agreement wherein one of the debtors agrees to purchase gas from Upstream. The base contract and the resulting spot confirmation forms do not mention Edge. The base contract does not state that Upstream is Edge's marketing agent, nor does it state that an interest owner is involved. The debtors and Duke argue, as a result, that the contract and confirmation forms do not meet the Enron test. The debtors and Duke further argue that under the Enron rationale a signed agreement for the purchase of gas must recognize the interest owner's rights. Section 9.343(a) does not, however, require that a signed agreement to purchase gas production contain a statement recognizing the interest owner's rights. Rather, the statute requires a signed agreement to purchase gas production or any other voluntary communication to the interest owner recognizing the interest owner's right.
Edge, Duke and the debtors were, and Edge and Duke, at least, remain, players in the Texas natural gas business. None of the parties have presented summary judgment evidence suggesting that the base contract with confirmation forms does not implicitly communicate an acknowledgment of the purchase of gas with an interest owner involved in the chain of production and delivery. None of the parties actually argue that there is a fact issue here warranting submission to a jury. Section 9.343 contemplates that players in the Texas natural gas business will understand the relationships in contracts to purchase gas. "People in the business of dealing with operators and `first purchasers' are substantially aware that royalty owners and the like always exist and have a claim to the production.... Their identities can be discovered through the realty records in most cases." Tex. Bus. & Com. Code § 9.343 official cmt. at ¶ 5 (2002).
The court has no basis to assume that entities such as Edge or Duke would operate in the Texas gas market if the base contract and subsequent confirmation forms did not meet the statutory requirements to protect the interest owners.
The court therefore finds that Edge obtained a perfected security interest in the gas sold through its agent Upstream to the debtors in May and June 2001.
The security interest attaches to the proceeds of the debtors' sale of the gas to Duke. Section 9.343(c) provides that the security interest exists in the gas production and in the identifiable proceeds of that production owned by, received by, or due to the first purchaser. The debtors sold the gas purchased from Upstream, as Edge's agent, to Duke. The security interest attached to the proceeds due from *325 Duke to the debtors for that gas. As the State Bar Committee Official Comment recognizes, "[n]o unfair surprise will result if [the royalty owners'] claim also extends to proceeds." Tex. Bus. & Com.Code § 9.343 official cmt. at ¶ 5.

Duke Payment
Duke contends that it paid for the gas. There are however genuine issues of material fact concerning Duke's contention that it has paid the debtors for the gas. Duke asserts that the debtors had over billed Duke for prior gas purchases. Duke nevertheless continued to purchase gas from the debtors. Duke credited portions of the gas shipments from the debtors to preexisting receivables. Duke took gas without paying for it as an extra-contractual remedy to reduce the alleged overpayments. Newhouse, the trustee for Aurora, GPR and Golden Prairie have filed an adversary proceeding to collect the receivable from Duke or to avoid the offset transfers. See GPR Holdings, LLC v. Duke Energy Trading and Marketing, LLC, adversary number 03-3430 (Bankr. N.D.Tex.).
If Duke prevails in the adversary proceeding, then Duke will have paid for the gas, and Edge's security interest will have attached to the payments received by the debtors. Duke would not owe the debtors for the gas purchased by the debtors from Edge and sold to Duke. Edge's lien extends to identifiable proceeds of the gas production owned by, received by or due to the first purchaser, the debtors. As Duke would not owe the debtors for the gas, having paid for it, Edge's security interest or statutory lien would not extend to proceeds held by Duke. Edge's security interest and statutory lien would extend to the proceeds received by the debtors for the sale of the gas produced by Edge. Edge's remedy would be to pursue its secured claims in the bankruptcy cases.
As discussed below, even if it does not have a security interest or statutory lien on proceeds obtained by Duke for the sale of the gas, Edge contends that it has a separate claim of conversion against Duke. Edge argues that it may pursue its conversion claim whether or not it files a claim in the bankruptcy estate. A direct action by Edge against Duke, if successful, would likely result in a claim by Duke against the estates. But that claim would be counterbalanced by the elimination of a secured claim by Edge, as Duke will have paid for the gas. There would be no net change to the bankruptcy estates. Thus, assuming Duke has paid the debtors for the gas, Edge could pursue direct actions against Duke, to the extent that such actions exist under applicable non-bankruptcy law.
On the other hand, if the debtors prevail in that adversary proceeding, then the credit by Duke will be voided, Duke will owe the debtors for the gas purchased by the debtors from Edge and sold to Duke, and the debtors will obtain a judgment against Duke for the outstanding amount due for the purchase of the gas. Under that circumstance, Edge would hold a security interest in the proceeds due to the debtors.
The debtors would hold a judgment against Duke. The judgment would be property of the respective bankruptcy estates. 11 U.S.C. § 541. Edge would hold a security interest in the proceeds due under the judgment.
The filing of the bankruptcy petitions by the debtors operated as a stay applicable to all entities of certain activities, including exercising control over property of the bankruptcy estate, enforcing a lien against property of the bankruptcy estate and collecting or recovering a pre-bankruptcy petition claim. 11 U.S.C. § 362(a)(3), (4), (5) and (6); All *326 Trac Transp., Inc. v. Transp. Alliance Bank (In re All Trac Transp., Inc.), 306 B.R. 859, 872 (Bankr.N.D.Tex.2004). Edge could not, therefore, pursue its security interest directly against Duke without obtaining relief from the automatic stay pursuant to 11 U.S.C. § 362(d). The court has not granted relief to Edge to pursue its security interest in property of the bankruptcy estates.
A direct action by Edge to collect from Duke would interfere with the debtors efforts to collect property of the estate, as Edge and the debtors would, in essence, be pursuing Duke for the same collection. Edge cannot interfere with the debtors' pursuit of property of the bankruptcy estates, absent leave of the bankruptcy court. Under the Supremacy Clause of the U.S. Constitution, U.S. Const. Art. VI, cl. 2, the automatic stay of the Bankruptcy Code prevails over Edge's non-bankruptcy claims against Duke. See In re First Texas Petroleum, Inc., 52 B.R. 322, 325 (Bankr. N.D.Tex.1985). Accordingly, in the event that the debtors prevail in the adversary proceeding against Duke, this adversary proceeding must be dismissed. Edge's remedy would be to pursue its security interest in the bankruptcy cases or obtain relief from the stay.
Accordingly, on this summary judgment record, Edge had a perfected security interest in the gas sold through Upstream to the debtors and sold by the debtors to Duke. If Duke paid for the gas, then Edge holds a perfected security interest in the proceeds owned by or received by the debtors from Duke. Edge must pursue its security interest in the proceeds by the bankruptcy claims process. To the extent that Edge has a separate claim against Duke under applicable non-bankruptcy law, Edge could pursue that claim. If Duke has not paid for the gas, then Edge holds a perfected security interest in the proceeds due from Duke to the debtors. Edge's ability to pursue collection however would be stayed by § 362 of the Bankruptcy Code.

Duke Purchase Free and Clear
Assuming that Duke has not paid for the gas and Edge obtains relief from the automatic stay, the court considers the reach of Edge's security interest and statutory lien to the sale of the gas by Duke to third persons. Addressing the statutory reach of the security interest, the State Bar Committee Official Comment observes, "[t]his section gives interest owners rights to oil production in the hands of a `first purchaser' and his transferees." Tex. Bus. & Com.Code § 9.343 official cmt. at ¶ 1. The first purchaser may terminate the security interest or statutory lien by paying, or by making and keeping open a tender of, the amount the first purchaser believes to be due the interest owner. Tex. Bus. & Com.Code § 9.343(1). The debtors have not paid Edge for the gas. The debtors did not provide for any of the alternative statutory methods to terminate Edge's security interest or statutory lien. Section 9.343(1). Consequently, the first purchaser did not terminate the security interest or statutory lien.
The person who buys from the first purchaser may buy the gas free and clear of the interest owner's security interest or statutory lien if the person meets one of the conditions enumerated in § 9.343(m), quoted above. The court must determine whether Duke cut off the security interest or the statutory lien in the gas or its proceeds by one of the statutory methods.
Edge contends that Duke failed to take any of the statutory measures to assure that it bought gas from the debtors free and clear of Edge's security interest or statutory lien. Duke counters that it had no need to take any of these measures because it paid the debtors for the gas. *327 With the debtors paid, Duke argues that did not hold proceeds of the gas production "due to the first purchaser" under § 9.343(c). Consequently, it contends that it had no reason to take any of the steps provided in § 9.343(m).
Edge's security interest and statutory lien attached to the gas and the proceeds from the sale of the gas. If Duke paid the debtors for the gas, then Duke would not hold proceeds of gas production "due to the first purchaser." If Duke did not pay for the gas, then Duke would hold proceeds of gas production "due to the first purchaser." In addition, Duke bought the gas. The gas was subject to Edge's security interest. With the issue of the payment for the gas subject to a genuine dispute and with the gas sold subject to the security interest and statutory lien, the court considers whether Duke bought the gas or held the proceeds free and clear of the security interest and statutory lien pursuant to § 9.343(m).
There is no genuine issue of material fact that Duke did not obtain Edge's express consent for the sale. Tex. Bus. & Com.Code § 9.343(m)(2). Edge impliedly consented to the debtor's resale of the gas on the market. The parties do not contend that implied consent meets the consent requirement to allow the transfer of the gas free and clear of Edge's security interest and statutory lien. The court notes that the implied consent issue is material to Edge's conversion claim, addressed below.
Duke did not ensure that the debtors paid Edge or Edge's operator. Id. at § 9.343(m)(3). Duke did not withhold or assure that another withheld funds sufficient to pay for the gas. Id. at § 9.343(m)(4).
There is a genuine issue of material fact of whether Duke bought the gas in the ordinary course of the debtors' business. Id. at § 9.343(m)(1). There is summary judgment evidence that the debtors and Duke regularly and customarily bought and sold gas. There is further summary judgment evidence that Duke negotiated a pre-payment system with the debtors to obtain discounted prices for gas. Duke took extra-contractual measures to pay for gas after it concluded that it overpaid the debtors for gas. Those extra-contractual measures are the subject of litigation. On this record, the court cannot find that an extra-contractual setoff would be outside the ordinary course of business in this industry. Consequently, the issue of the purchase by Duke in the ordinary course of the debtors' business must be resolved by a trial. Until the § 9.343(m)(1) issue is resolved at trial, the court cannot conclude whether or not Duke purchased the gas in the ordinary course of business and, if payment is due to the debtors, holds proceeds subject to Edge's security interest and statutory lien. If Duke bought the gas from the debtors in the ordinary course of the debtors' business, then Duke would have purchased the gas free and clear of Edge's security interest and statutory lien. If Duke did not purchase the gas from the debtors in the ordinary course of the debtors' business, then Duke would not have purchased the gas free and clear of Edge's security interest and statutory lien.

Conversion
Assuming that Duke did not purchase the gas in the ordinary course of the debtors' business, the gas when purchased by Duke would have been subject to Edge's security interest and statutory lien. Assuming further that the debtors prevail in the collection adversary proceeding against Duke, the proceeds of the gas when sold by Duke would have been subject to Edge's security interest and statutory *328 lien. If Duke prevails in the collection adversary proceeding, Edge would not have a security interest or statutory lien on proceeds held by Duke from the sale of the gas by Duke to third persons, but the security interest and statutory lien in the gas itself would have existed. Edge contends that by selling the gas without paying the proceeds to Edge, Duke converted Edge's interest in property.
Under Texas law, conversion is established by proving that: (1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner; and (3) defendant refused plaintiffs demand for the return of the property. Russell v. Am. Real Estate Corp., 89 S.W.3d 204, 210 (Tex.App.Corpus Christi, 2002, no pet.). Stated somewhat differently, conversion is "the wrongful exercise of dominion and control over another's property in denial of or inconsistent with the property owner's rights." Edlund v. Bounds, 842 S.W.2d 719, 727 (Tex.App.Dallas, 1992, writ denied). When the defendant initially acquires possession of personalty by lawful means, conversion generally occurs upon refusal of a demand for return of the property. Permian Petroleum Co. v. Petroleos Mexicanos, 934 F.2d 635, 651 (5th Cir.1991). "`When an indebtedness can be discharged by payment of money generally, an action in conversion is inappropriate.'" Edlund, 842 S.W.2d at 727 (quoting Eckman v. Centennial Sav. Bank, 757 S.W.2d 392, 398 (Tex.App.Dallas 1988, writ denied)). Thus, in a debtor-creditor relationship, the remedy is a money judgment for the debt, not conversion. Eckman, 757 S.W.2d at 398. The measure of damages for conversion is the value of the property at the time and place of conversion. Edlund, 842 S.W.2d at 727.
Edge agreed to sell gas to the debtors through Upstream. There is no genuine issue of material fact that Edge knew that the debtors would resell the gas. While Duke did not obtain Edge's express consent for the debtors' sale of the gas to Duke to cut off the security interest under § 9.343(m)(2), there is nevertheless no genuine issue of material fact that Edge consented to the resale of the gas by the debtors. When Duke purchased the gas from the debtors, Duke therefore obtained dominion and control over the gas in a lawful and authorized manner, albeit subject to Edge's security interest and statutory lien.
Duke purchased gas in May before the debtors' payment was due to Edge. Likewise, Duke purchased gas in June before the debtors' payment for the gas was due to Edge. Thus, at the time of the Duke purchases, payment by the debtors was not due to Edge. Before payment was due on June 25, 2001, Edge had no right to possession of its security interest in the gas or its proceeds; that is, until the debtors defaulted on their obligation to pay Edge, Edge could not enforce its security interest in the gas or its proceeds. By the time the debtors defaulted to Edge, Duke had sold the gas. Duke sold the gas in a lawful and authorized manner. Duke obtained the proceeds of the sale of the gas in a lawful and authorized manner.
Possession of legally obtained property would not be considered converted unless the use of the property departs so far from the conditions under which it was received as to amount to an assertion inconsistent with that of the owner. Pierson v. GFH Fin. Servs. Corp., 829 S.W.2d 311, 314 (Tex.App.Austin 1992, no writ). There is no summary judgment evidence to suggest that Duke sold the gas, obtained possession of the proceeds or used the proceeds from the sale of the gas *329 inconsistently with gas market transactions in Texas. Edge does not request return of the gas. Edge seeks payment for the sale of the gas. There is no summary judgment evidence that Edge cannot maintain a collection action to enforce its security interest or statutory lien if it reaches Duke.
Furthermore, conversion involves taking of property without the owner's consent. If the owner impliedly consented to the disposition of the property, the owner may not maintain a claim for conversion. Pan Eastern Exploration Co. v. Hufo Oils, 855 F.2d 1106, 1125 (5th Cir. 1988). As the court found above, there is no genuine issue of material fact that Edge impliedly consented to the resale of the gas in the market place. Edge argues that Duke must plead consent as an affirmative defense. The court focuses on market expectations, however. As discussed above, the establishment of the security interest and statutory lien of § 9.343 had been designed to fit consistently with prevailing practices in the gas industry. At times in this litigation both Edge and Duke have left the court with the impression that neither is being particularly forthright in their approach to this dispute.
Duke sold the gas to third persons. The third persons paid Duke for the gas. As found above, Duke thereby obtained possession of the proceeds of the gas. If Duke did not pay the debtors for the gas, then Edge's security interest would have attached to the proceeds obtained by Duke and due, in turn, to the debtors. Edge's security interest secured the debtors' indebtedness to Edge. Edge could enforce its security interest. The debtors contend that Edge has not presented summary judgment evidence that it made a demand for the return of the property on Duke. Edge argues it need not make an express demand to Duke for payment. But where Edge expected the gas to be sold in the market and where Duke acted lawfully in obtaining and reselling the gas, Edge must make a demand for payment of its security interest or statutory lien as a prerequisite for an action of conversion of its collateral. Otherwise, Duke would have no reason to believe that it had possession of Edge's collateral. Duke did not need to return the gas. Duke would pay the debtors for the gas purchased from the debtors.
But, even if a formal demand would not be needed when a statutory lien is involved, as discussed below, Edge's security interest extends only to identifiable proceeds of the gas productionthat is, the amount due to Edge for the gas sold to the debtors. That indebtedness can be discharged by payment of money. Furthermore, Edge is only entitled to the payment of that indebtedness. The measure of damages for conversion is the value of the property at the time and place of the conversion. But Edge is not entitled to the value of the property at the time of conversion. Edge is only entitled to the amount due for the gas when sold by Edge to the debtors. Because the indebtedness could be satisfied by the payment of money and Edge is not entitled to the damages for conversion, conversion is inappropriate.
Edge contends that it may pursue collection by conversion. Texas law does recognize that "in an appropriate case" a secured creditor may maintain an action for conversion if collateral has been sold without the secured creditor's consent. See Amarillo Nat. Bank v. Komatsu Zenoah America, Inc., 991 F.2d 273, 275 (5th Cir. 1993). But that case law begs the question. Edge does not seek return of the gas. Edge does not seek to repossess collateral. Edge seeks payment for the gas sold to the debtors. As discussed above, the collection of a debt by enforcing *330 security interest in collateral does not translate into "an appropriate case" for conversion.
If Duke paid the debtors, Edge's security interest would not reach the proceeds of the sale of the gas by Duke to third persons, for the reasons stated above. Nevertheless, the gas itself would still be subject to the security interest or statutory lien. Edge contends that when Duke sold the gas but did not deliver the proceeds to Edge, Duke converted Edge's interest in the gas itself. Alternatively, Edge contends that when Duke credited its debt to the debtors after Duke sold the gas, the act of setoff amounted to the conversion of Edge's security interest in the gas. In essence, the court understands Edge's argument as follows. Duke sold gas subject to Edge's security interest and statutory lien. Duke received the proceeds from the sale. Duke did not owe the proceeds to the debtors because Duke had paid the debtors by offset and credit. Nevertheless, Duke transformed Edge's security interest in the gas into dollars. The gas is gone. While the sale was lawful and authorized, the proceeds should have been preserved or paid to Edge. Otherwise, Edge loses its collateral. Edge concludes that amounts to conversion.
While circular, Edge's reasoning returns to the same point. Edge seeks a money judgment based on its security interest and statutory lien for the payment of the gas Edge sold through Upstream to the debtors. Edge's theory for a claim of conversion of proceeds of the sale of the gas amounts to a claim for conversion of money.
"An action for the conversion of money will lie if the money can be identified as a specific chattel." Edlund, 842 S.W.2d at 727. "An action for the conversion of money may be brought where money is (1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper." Id. There is no summary judgment evidence that, because of Edge's security interest or statutory lien in the gas sold by the debtors to Duke and, in turn, sold by Duke to third persons, Edge intended that the proceeds of the sale by Duke be held for safe keeping in a segregated account and intact. Furthermore, Duke obtained title to the proceeds, whatever Edge's security interest may have been. See also Estate of Townes v. Townes, 867 S.W.2d 414, 419-20 (TexApp.Houston [14th Dist.] 1993, writ denied).
This is not a situation where the proceeds of the sale of the gas had to be held in trust for the interest owners. See Suddarth v. Poor, 546 S.W.2d 138 (Tex. CivApp.Tyler 1977, writ refd n.r.e.). Nor is this a situation where Duke had notice of Edge's security interest or statutory lien. Texas case law recognizes that a person who accepts and benefits from proceeds subject to a statutory lien, with actual notice of the lien, may be subject to a claim for conversion of the proceeds by the lienholder. Home Indem. Co. v. Pate, 814 S.W.2d 497, 498-99 (Tex.App.Houston [1st Dist.] 1991, writ denied). Thus, where an attorney in a workers' compensation case knows that he has received settlement proceeds subject to the compensation insurance carrier's first priority in the funds, but disburses the funds anyway, the attorney may be subject to a claim of conversion of the proceeds. Prewitt and Sampson v. City of Dallas, 713 S.W.2d 720, 722 (TexApp.Dallas 1986, writ refd n.r.e.). Edge has not presented summary judgment evidence that Duke had actual notice of Edge's security interest or statutory lien. Furthermore, Edge has not presented summary judgment evidence *331 that Duke had actual notice that the debtors had not paid Upstream for the gas. While the court presumes that Duke has knowledge of § 9.343, that does not translate into actual notice that the debtors did not pay Edge or that Duke purchased gas bought by the debtors from Edge. On this summary judgment record, Duke only knows that it bought gas carried in a pipeline from the debtors. Edge may not maintain a claim for conversion of money.
Edge argues that without a claim for conversion, it loses its statutory protection, thereby defeating the statute's policy. Edge further argues that imposing an obligation on Duke does not work a hardship on Duke. Edge asserts that a purchaser of gas from a "first purchaser" under § 9.343 may protect itself from an interest owner's security interest or statutory lien by meeting one of the elements of § 9.343(m). If the subsequent purchaser fails to obtain those protections, then it acts at its peril in selling gas without preserving the proceeds for the interest owner. If double liability results, namely, to the first purchaser for the purchase of the gas and to the interest owner if the first purchaser fails to pay the interest owner, the double liability results only because of a failure to attain the protection of § 9.343(m). But, Edge argues, the interest owner's protections must prevail under the statute.
The court has analyzed the conversion claim on this summary judgment record because Edge, Duke and the debtors/intervenors all ask the court to attempt to resolve the adversary proceeding on their competing summary judgment motions. In analyzing the conversion claim the court has therefore assumed that Duke did not purchase the gas free and clear of Edge's interest under § 9.343(m). There is a genuine issue for trial of whether Duke purchased the gas from the debtors in the ordinary course of the debtors' business. Nevertheless, the court's analysis of the Texas law on conversion does not result in undermining the public policy of § 9.343. The court has merely held that Edge's claim of conversion cannot be maintained. In part, that is because Edge has not established that Duke did not act lawfully, obtaining property consistent with market practices and/or with Edge's implied consent. Further, that is because Edge has not established that it cannot obtain a money judgment based on its collateral in a debtor/creditor context. Further, that is also because Edge itself did not establish a contractual basis with Duke or actual notice to Duke for a claim of conversion of money.
The court does address one other issue. Both Duke and the debtors contend that Edge may only assert a security interest in "identifiable" proceeds under § 9.343(c). Apparently, the debtors and Duke would impose a requirement that specific dollars be traced from the sale of the gas. That reading would nullify the security interest granted in the proceeds from the gas production. A statute should not be read to defeat its purpose. See In re G.R.M., F.A.M., and N.D.M., 45 S.W.3d 764, 770 (Tex.App.Fort Worth 2001, no pet.) ("In construing a statute, our primary aim is to give effect to the legislature's intent.... Our construction of the provisions must be consistent with their underlying purpose and the policies they promote."). The Legislature intended that the statute recognize prevailing practices in the gas industry. Thus, for example, the Legislature concluded that it seemed an undue burden to change historic ways of doing business to require gas pipeline companies and gathering systems to insist on paying individual interest owners directly. The statute therefore allows payments to someone else in a chain to ultimately discharge the interest owner's security *332 interest or statutory lien. Tex. Bus. & Com.Code § 9.343 official cmt. at ¶ 9. Under this payment scheme, tracing of actual dollars would be unnecessary and counterproductive, undermining the very nature of permitting payments through a chain to ultimately reach the interest owners.
Section 9.343(c) recognizes the security interest in "gas production" and "in the identifiable proceeds of that production." In reading this provision, the court must give significance to every word. The word "identifiable" must be read in the context of the sentence. The court must consider the particular statutory language, the design of the statute as a whole and its object and policy. The court must avoid a reading that would create internal inconsistencies or contradictions. But where the statutory scheme is coherent and consistent, the court generally need not inquire beyond the statute's language. Celadon Trucking Svcs., Inc. v. Titan Textile Co., Inc., 130 S.W.3d 301, 305 (Tex.App. Houston [14th Dist.] 2004, pet. filed).
"Identifiable" commonly means "subject to identification; capable of being identified." "Identify" means "to link in an inseparable fashion" or "to join with some interest." Webster's Third New Int'l Dictionary 1123 (1993). Black's Law Dictionary defines "identify" as "[t]o look upon as being associated with" or "[t]o specify ... as the object of a contract." Black's Law Dictionary 748 (7th ed.1999). Applying these common meanings, "identified" proceeds "of that production" means proceeds linked to or joined with the gas production subject to the security interest; the proceeds associated with the gas production subject to the security interest. The statute thus extends the security interest to the proceeds that can be identified as associated with or linked to the gas production.
The statute does not require that, to be identifiable, the actual dollars obtained from the sale of the gas be traced. That reading would be inconsistent with the design of the statute as a whole and its object and policy. Rather, it requires that the security interest be limited to only the proceeds linked with or associated with the actual gas production subject to the security interest.
Thus, presumably, the debtors sold the gas to Duke for an amount greater than the debtors would have paid Edge. Edge's security interest only extends to the proceeds due from Duke to the debtors identified with the gas sold by Edge to the debtors. That limits the security interest to the amount due by the debtors to Edge, which accomplishes the purpose of the statute, namely, to assure payment of interest owners while not disrupting the market for the sale of gas in Texas.
Edge therefore has no requirement to trace the dollars from Duke's sale of the gas to have a security interest in identifiable proceeds of the gas production.
Duke and the debtors may also argue that the gas itself must be traced. All parties know that the gas is delivered into a pipeline and commingled with other gas in the pipeline. It is disingenuous for Duke, a player in that market, to even suggest that the gas must be traced. See Tex. Bus. & Com.Code § 9.336. If Edge could maintain a claim of conversion, it is based on the loss of collateral, not on the sale of volumes of gas from the pipeline.

Summary
Edge had a security interest and statutory lien in the gas and in the proceeds of the gas owed by, received by or due to the debtors. If Duke paid the debtors for the gas, Edge may pursue its secured claim against the debtors. Edge would not have a security interest in the proceeds of the *333 gas sold by Duke to third persons. If Duke has not paid the debtors for the gas, Edge would have a lien on the gas and the proceeds obtained by Duke, unless Duke bought the gas free and clear of Edge's lien pursuant to § 9.343(m). Edge may not, however, maintain a claim against Duke, if Duke has not paid the debtors for the gas, without obtaining relief from the automatic stay. There is a genuine issue of material fact of whether Duke purchased the gas in the ordinary course of the debtors' business. Whether or not Duke paid the debtors for the gas and whether or not Duke bought the gas in the ordinary course of the debtors' business, Edge may not maintain a claim of conversion against Duke.
Based on the foregoing,
IT IS ORDERED that the motion of Duke Energy Trading and Marketing, L.L.C., to strike plaintiffs supplemental appendix is DENIED.
IT IS FURTHER ORDERED that the motion for summary judgment filed by Edge Petroleum Operating Co., Inc., is DENIED.
IT IS FURTHER ORDERED that the motion for summary judgment filed by Duke Energy Trading and Marketing, L.L.C., is GRANTED.
IT IS FURTHER ORDERED that the motion for summary judgment filed by GPR Holdings, L.L.C., Golden Prairie Supply Services, L.L.C., and Aurora Natural Gas, L.L.C., is GRANTED.
IT IS FURTHER ORDERED that this adversary proceeding is DISMISSED.