**In re MOOSE OIL & GAS COMPANY, Debtor.**

**Doris Barnes, Plaintiff,**

**v.**

**Dominion Oklahoma Texas Exploration & Production, Inc., Moose Oil & Gas Company, Defendant.**

**Bankruptcy No. 02–33891.**
**Adversary No. 02–6012.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Aug. 22, 2006.

Mark C. Harwell, Cotham Harwell et al., Houston, TX, for Debtor.

*MEMORANDUM OPINION, FINDINGS, CONCLUSIONS AND ORDER FOR PREPARATION AND PRESENTATION OF FORM OF JUDGMENT DISMISSING CLAIMS BY DORIS BARNES AGAINST DEFENDANT MDR, GRANTING JUDGMENT AGAINST DEFENDANT TAWES, AND PROVIDING FOR PAYMENT OF ROYALTIES ACCRUING AFTER FEBRUARY 2002*

WESLEY W. STEEN, Bankruptcy Judge.

Doris Barnes ("Plaintiff" or "Barnes") seeks judgment against O. Lee Tawes III ("Tawes") and Marlin Data Research ("MDR"), for royalties on mineral production from the Baker Barnes # 1 and # 2 wells for the period prior to February, 2002, and to recognize her right to royalties which have been suspended for production since that date. On stipulated facts, for reasons set forth in detail below, and by separate judgment to be provided by the parties consistent with this decision, the Court will issue judgment in favor of Barnes against Tawes, against Barnes in

favor of MDR, and providing for release of funds from suspense.

## FACTS

Plaintiff owned land in Lavaca County, Texas, and executed a mineral lease of that land in favor of American.[1] Louis Dreyfus[2] acquired American's interest and then conveyed that interest to Dominion.[3]

Moose[4] leased adjacent land and assigned some of the leasehold interests to parties referred to in the stipulations as the Moose Assignees. Dominion, Moose, and the Moose Assignees entered into a Working Interest Unit Agreement and Joint Operating Agreement (JOA) that included Plaintiff's property. Tawes is a Moose Assignee, but MDR was not. Tawes signed the Working Interest Unit Agreement and the JOA in 1998, prior to the mineral production at issue in this adversary proceeding.[5] Production was achieved from four wells. With respect to two of those wells (the Baker–Barnes # 1 and # 2 wells, the "Non–Consent Wells") Moose and the Moose Assignees (including Tawes) were Consenting Parties to drilling the Non–Consent Wells and Dominion was a Non–Consenting Party. Under the terms of the JOA, Consenting Parties were responsible for the expenses of drilling the wells and were responsible for payment of royalties due with respect to leases contributed to the Unit by Non–Consenting Parties.[6] Consenting Parties were entitled to recover 400% of their expenditures on the Non–Consent Wells

1. American Exploration Company.

2. Louis Dreyfus Natural Gas Corp.

3. Dominion Oklahoma Texas Exploration & Production, Inc.

4. Moose Oil and Gas Company and Moose Operating Company, Inc.

5. Joint Stipulation, docket # 184 ("Joint Stipulation") paragraph 11.

6. Docket # 185, Exhibit 6, lines 39–42 of page Bates marked LDNG–000068.

before Non–Consent Parties were entitled to payment of any revenue from the wells.

February 13, 2002, at foreclosure sale, MDR and Tawes purchased Moose's interest in the Baker Unit and specifically in the "Non–Consent Wells." Production of those two wells after February 2002, has been suspended and is held in a Royalty Suspense Account and in a Working Interest Suspense Account.

As of February, 2002, Barnes undisputed royalty in the Non–Consent Wells was $291,846.00.

## ISSUE

Plaintiff contends that she is entitled to recover all unpaid royalties from the Non–Consent Wells from both Tawes and MDR and from production payments due them that are being held in suspense by the operator of the wells. Defendants contend that they have neither privity of contract nor privity of estate with Plaintiff and therefore they are not personally liable to Plaintiff. Defendants further contend that their suspended production payments are not liable for that payment.

## CONCLUSION

*Judicial Estoppel*

Tawes and MDR assert that Barnes is judicially estopped from asserting that they are liable to her. Tawes and MDR assert that Barnes argued that she had no privity of contract with any party other

than Dominion and that the Court awarded her summary judgment on that allegation.

The most frequently cited definition in the Fifth Circuit for judicial estoppel is found in *In re Superior Crewboats, Inc.*, 374 F.3d 330 (5th Cir.2004) where the Court of Appeals for the Fifth Circuit said:

> This circuit, however, has recognized three particular requirements: (1) the party is judicially estopped only if its position is clearly inconsistent with the previous one; (2) the court must have accepted the previous position; and (3) the non-disclosure must not have been inadvertent. (*Id.* at 335.)

▮▮▮ While it is true that Barnes argued privity of contract as the basis for recovery from her lessee, Dominion, that position is not clearly inconsistent with an argument that other parties are also liable. Two parties may be liable to a third party for the same debt, under different legal theories.[7] That principle is too obvious to require extended discussion.

The second element for application of judicial estoppel is also not satisfied. Even assuming that Barnes argued that she had no privity of contract with any other party, the Court did not accept that argument and award relief based on that argument. The Court specifically stated that it was merely holding that Dominion was liable on a contract; the decision did

---

7. In the Tawes/MDR memorandum, counsel states: "Her current claim that Tawes and Marlin assumed the obligations of the Barnes lease by virtue of their being parties to the 'Dominion–Moose Agreements,' is irreconcilable with her repeated allegations when seeking judgment against Dominion that 'Dreyfus [Dominion] and Moose agreed to share the cost of the first well to be drilled under the Dreyfus–Moose Agreement, but Dreyfus remained responsible for payment of the Barnes royalty under the Barnes lease'." The Court

does not see these allegations as irreconcilable. Assumption of a contractual liability by a third party does not necessarily relieve the original obligor of liability. Tawes and MDR recognize this in their memorandum: "Generally, the assignor of a contract remains liable for performance of the obligations which he assumed therein, even after it is assigned. *Potts v. Burkett*, 278 S.W. 471, 473 (Tex.Civ. App.-Eastland 1926, no writ)." (Tawes/MDR Memorandum of Authorities, Docket # 192, paragraphs 22, 28).

not conclude that Dominion was liable because others were not.

The Court is merely ruling that the only summary judgment evidence produced by the parties to the cross-motions for summary judgment do not evidence any release of Dominion from its liability under the lease.[8]

Barnes contractual relationship with any other party, or the lack of any such relationship, was not the basis of the Court's ruling.

Since the first two requirements are not satisfied, the Court finds that judicial estoppel does not apply to preclude Barnes' claims.

*Tawes and MDR Are Not In Privity of Contract With Barnes on the Lease and Are Not In Privity of Estate Prior to February 13, 2002*

■ Plaintiff has produced no evidence that Defendants assumed the Barnes lease. As regards Plaintiff, Defendants are working interest owners, liable only on their contracts as of the date that they signed the contract or succeeded to the interests of a predecessor in interest.

Under Texas law, unaccrued royalties on oil and gas are interests in realty. Accrued royalties, however, are interests in personal property. Oil and gas severed (extracted) from the land become personal property. Royalties accrue, and therefore become interests in personal property, at the time the minerals are severed from the land. It follows then that royalties become interests in personalty at the time the minerals for which they are owed become personalty. [*Anadarko E & P v. Clear Lake Pines, Inc. et al* 2005, 9 Tex.App. Lexis 5467, citations omitted.]

■ Since Defendants acquired Moose's interest subsequent to severance of the minerals for which royalties are due, the Court sees no basis for imposing liability on them for payment of those royalties as assignees or successors to Moose.

### TEX. BUS. & COM.CODE § 9.343

■ In *Anadarko* the court expressly held that the acquiror of a lessee's interest under a mineral lease is not *per se* a "first purchaser" of minerals. In addition, although not separately and specifically articulated in *Anadarko* the Court's decision required a conclusion that the acquiror of the lessee interests under a mineral lease does not take the mineral estate subject to encumbrance for royalties that were payable on production that preceded the acquisition because upon severance the royalties became personalty and the royalty interest was no longer an encumbrance on the real property interest acquired by the acquiror.

Plaintiff argues in section III(A) of his memorandum that "Elementary principles of Texas oil and gas law soundly reject Tawes and MDR's claim and strongly support Mrs. Barnes' claim to the production proceeds." For that proposition, Plaintiff cites two authorities: (I) Tex. Bus. & Com. Code § 9.343, as interpreted by *Stable Energy L.P. v. Newberry*, 999 S.W.2d 538 (Tex.App.-Austin 1999, *pet den.*). and (ii) *In re Tri–Union Dev. Corp.*, 253 B.R. 808, 814 (Bankr.S.D.Tex.2000).

The Court recognizes these authorities as giving a statutory right to payment of royalties out of production as it is severed from the real property. The Court sees no authority in these citations for payment of royalties out of production that occurs substantially later than the date on which

8. Docket # 93, page 4.

the minerals were severed from the land and converted to personalty.

The *Tri–Union* case is materially different from the situation under consideration here. Judge Greendyke was dealing with cash held by a bankruptcy estate, for which the estate had recognized liability to the royalty owner. The facts of *Tri–Union* involved payment of assets of a bankruptcy estate, not suspended payments under Texas law.

In short, the Court does not understand Tawes and MDR to be "purchasers" of oil and gas proceeds as defined in the statute. *Liability of Tawes to Barnes as a Third Party Beneficiary*

In the Joint Operating Agreement (JOA), Dominion and Moose agreed that

During the period of time Consenting Parties are entitled to receive Non–Consenting Party's share of production, or the proceeds therefrom, Consenting Parties shall be responsible for the payment of all ... all royalty ... and other burdens applicable to Non–Consenting Party's share of production ... [9]

■■■■■■ As the Tawes memorandum asserts:

To be a third party beneficiary of a contract under Texas law, a party must establish both that (1) the contracting party intended to confer some benefit to the third party; and (2) the contracting party entered in the contract directly for the third party's benefit. *Refinery Holding Co., L.P. v. TRMI Holdings, Inc. (In re El Paso Refinery, L.P.)*, 302 F.3d 343, 354 (5th Cir.2002), *citing MCI Telecommunications Corp. v. Texas Utils.*

*Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999). The intent to benefit a third party must be clear from the language of the agreement. *El Paso Refinery*, 302 F.3d at 354. Persons who benefit only incidentally by the performance of the contract are not third party beneficiaries.[10]

In the *MCI Telecommunications* case cited by the Fifth Circuit, the owner of a power line right-of-way, ("TU"), sued MCI, owner of a telecommunications right-of-way, because MCI damaged TU's power poles. Both TU and MCI were licensees of the railroad. TU merely owned a right to joint use of the right-of-way; it did not have any right to payment or other affirmative performance from the railroad. MCI agreed not to interfere with the rights of other right-of-way licensees, but did not affirmatively agree to perform any duty owed by the railroad.[11] In addition, the contract specifically stated:

... [N]either this Agreement, nor any term or provision hereof, nor any inclusion by reference, shall be construed as being for the benefit of any party not in signatory hereto.[12]

The Texas Supreme Court stated:

To qualify as one for whose benefit the contract was made, the third party must show that he is either a donee or creditor beneficiary of, and not one who is benefited (sic) only incidentally by the performance of, the contract ... If ... performance will come to him in satisfaction of a legal duty owed to him by the promisee, he is a creditor beneficiary ... this duty may be an "indebtedness, contractual obligation or other legally

---

9. Docket # 185, Exhibit 6, lines 39–42 of page Bates marked LDNG–000068.

10. Docket # 192, paragraph 31.

11. "MCI hereby agrees to exercise the herein granted rights in such a manner as not to interfere in any way with any existing prior rights." *MCI* at 649.

12. *Id.*

enforceable commitment" owed to the third party.[13]

■■■ As the Court determined by prior decision, Dominion (a Non–Consenting Party) owed royalties to Barnes. It was an "... indebtedness, a contractual obligation, or other legally enforceable commitment...." Those royalties would normally be payable out of Dominion's share of production, but since Dominion was a Non–Consent Party, the Consent Parties had the right to the revenues. As part of that agreement, the Consent Parties (including Tawes) agreed to perform Dominion's legal obligations. It all seems quite logical, and within the contemplation of the jurisprudence in concluding that an agreement to perform an obligation of another is legally binding. Therefore, the Court concludes that Barnes is the third party beneficiary of Tawes' obligations under the JOA to pay royalties owed by Dominion as a Non–Consent Party.

The JOA does not limit the liability of the Consenting Parties to their percentage working interests. Therefore, Tawes is liable for all of Barnes' unpaid royalty from the Non–Consent Wells.

*Royalties Due After February, 2002*

Barnes argues that both Tawes and MDR became liable to pay her royalties as a result of the foreclosure sale under which they purchased Moose's working interests in the wells. The Court concludes that Barnes' right to collect royalties that accrued subsequent to February, 2002, arise from the privity of estate that occurs by virtue of the foreclosure sale in February. Those royalties are suspended and thus no personal judgment against Tawes or MDR is required.

## FORM OF JUDGMENT

Tawes is liable to Barnes for royalties due from production from the Non–Con-

sent Wells prior to the date that royalties were suspended, but MDR is not. Since Tawes is liable to Barnes as a third party beneficiary, the Court will issue a judgment in favor of Barnes against Tawes for unpaid royalty that is not suspended. But the Court has been cited to no authority for award of attorneys fees or for distribution to Barnes of funds held in suspense for Tawes.

Because there does not appear to be any dispute about payment of royalties subsequent to the date that royalties were suspended, the judgment will recognize the obligation to pay Barnes royalties that have been suspended.

The Court directs counsel for Barnes to prepare a form of judgment consistent with this opinion and to confer with counsel for Tawes and MDR to try to resolve any objections to the form of judgment (reserving to Tawes and MDR the right to appeal the judgment). Barnes' right to appeal the judgment is also reserved. Both counsel are directed to present the proposed form of judgment to the Court on September 18, 2006, at 3:00 PM. Counsel should deliver to the Court's chambers a courtesy copy of the proposed form of judgment and any objection (in writing) on or before September 11.

---

**13.** *Id.* at 651 (citations omitted).